Susan E. Moore v. The Union Fraternal Accident Association, F. R. Crocker, and J. E. Lockwood, Appellants.

**Insurance:** POLICY, BY-LAWS AND STATUTE: *Notice.* A member of a mutual life insurance association is advised that the indemnity is limited to a percentage of the assessment upon the membership as provided by the articles of incorporation and by-laws of the association, notwithstanding that the policy on its face is an absolute promise of indemnity, where it contains an indorsement on its back to the effect that it is issued pursuant to Iowa Laws 1886, chapter 65, under which "the benefits herein provided are derived from payments by policy holders, as ordered by the board of directors."

INCORPORATIONS: *Recovery against.* An officer or incorporator of a mutual insurance association cannot, in the absence of fraud or deception, be held liable to a beneficiary because the policy on its face was an absolute promise of indemnity, whereas the indemnity is limited by statute and the articles of incorporation to the amount of an assessment, where the member, in securing the insurance, knows that the company was mutual and constructed on the assessment plan.

SAME: *Evidence.* That an insurance association is precluded from proving the application in an action on the policy because a copy thereof was not attached to or indorsed on the policy as required by Acts Eighteenth General Assembly, chapter 211, section 2, does not preclude an officer or incorporator sought to be held liable because of the misleading form of the policy, from using the application to show that the insured was not misled to his detriment by the form of the policy.

**Misappropriation:** EVIDENCE. No misappropriation of funds by the officers of a mutual benefit society is shown by evidence merely indicating the receipts and amounts expended for different purposes, without any showing as to whether these were improper.

**Incorporation of Mutual Benefit Society:** CONSTRUCTION OF STATUTE: *Notice.* Acts Twenty-first General Assembly, chapter 65, enacted to regulate the organization and operation of mutual benefit societies is complete in itself; and persons organizing under it need comply only with its requirements, and need not publish notice of intention to incorporate, nor include the word "mutual" in the title of the society, as required by Code 1873, sections 1122 and 1140.

*Appeal from Council Bluffs Superior Court.*—HON. J. E. F. McGEE, Judge.

FRIDAY, OCTOBER 22, 1897.

ACTION at law by plaintiff, as beneficiary of a certificate of life insurance issued April 27, 1892, to John D. Moore, who died December 7, 1893. Trial to court; judgment against defendants for the full amount of the policy; and they appeal.—*Reversed.*

*T. M. Stuart* for appellants.

*Mayne & Hazelton* for appellee.

LADD, J.—The first question arising on the record is whether the Union Fraternal Accident Association was organized as required by the statutes of this state. All the provisions of chapter 65 of the Acts of the Twenty-first General Assembly were complied with. But it is insisted this was simply amendatory of the law as it existed, and that by failing to follow the provisions of sections 1122 and 1140 of the Code of 1873, by publishing notice of intention to incorporate, and by including the word "Mutual" in the title, the incorporation was not perfected, and the incorporators are chargeable as partners. An examination of chapter 65, referred to, demonstrates that, excepting statutes applicable to all insurance alike, it is complete in itself, and was so intended by the legislature. It was enacted for the purpose of regulating the organization and operation of mutual benefit associations, as plainly stated in the title; and such associations as are not already in existence are prohibited from engaging in business before complying with all the provisions of the act. On the other hand, upon compliance with the act, the auditor of state is required to issue a certificate authorizing the association to transact business for one year from April 1 of the year of its issue. Section 18. The association is therefore organized to do business without doing more than comply with the conditions of this act. Throughout the chapter associations are referred to as "organized under this act," and penalties are imposed for violations thereof. The publication of notice, as required in section 2, after approval of the articles of incorporation, obviates the necessity of some other kind of notice, and the whole plan is essentially different than that provided in section 1122 and 1123 of the Code. By fixing a rule for the adoption of a name in section 3, the other method seems to be excluded; and

the necessity of including the word "Mutual" is obvi-
ated by requiring each application to have printed in
red ink, in a conspicuous manner along the margin of
the application, these words: "It is understood and
agreed that the amount to be paid, when the certificate
or policy issued on this application becomes a claim,
shall be dependent upon the amount collected from an
assessment to meet such claim." Section 4. The term
"Mutual" shall be included only in the titles of com-
panies organized as provided in chapter 4 of the Code,
and there was no attempt to organize this association
under that chapter. The laws of the Twenty-first Gen-
eral Assembly take the whole subject of insurance
under mutual benefit companies out of chapter 4 of the
Code, prohibit such insurance "upon any other event
than that of death or disability resulting from accident
to the member," and make complete and ample pro-
visions for their organization, management, and
control.

II. It is said the policy on its face is an absolute
promise of indemnity. That part preceding the naming
of benefits is in these words: "In consideration of the
warranties in the application of this certificate,
which application is made a part of the contract,
and the sum of five dollars as a membership fee,
and of such future payments as may be required under
its articles of incorporation and by-laws, does hereby
accept John D. Moore, of Brimfield, state of Illinois,—
occupation, proprietor and salesman agriculture store,
—a member of this association, subject to all the con-
ditions hereinafter contained, and entitled to the fol-
lowing benefits." No conditions other than above set
out appear in the body of the policy, but under the
heading "Agreement and Conditions under Which This
Certificate is Issued and Accepted," on the back of the
policy, is this among other provisions: "This policy is

issued pursuant to chapter 65 of the Laws of 1886 of the State of Iowa, under which the benefits herein provided are derived from payments by policy holders, as ordered by the board of directors." So that the insured was fully advised that payments should be made as required by the articles of incorporation and by-laws. These were expressly referred to as controlling the future payments, and became a part of the policy. *Simeral v. Insurance Co.*, 18 Iowa, 319; *Davidson v. Benefit Society*, 39 Minn, 303 (39 N. W. Rep. 803); *Walsh v. Insurance Co.*, 30 Iowa, 133; *Hobbs v. Association*, 82 Iowa, 107. The articles limit the amount to be paid in event of loss to one assessment less ten per cent. That the company was managed on the assessment plan was in fact fully understood by the assured. On the application signed by him was printed, in red ink, the clause heretofore referred to, clearly stating how the indemnity, in event of loss was to be provided.

3 A copy of the application was not attached to or indorsed on the policy, as required by section 2 of chapter 211 of the Acts of the Eighteenth General Assembly, and for this reason the company could not plead or prove the application in an action on the policy. *Cook v. Association*, 74 Iowa, 746; *McConnell v. Association*, 79 Iowa, 757. But this does not preclude an officer or incorporator sought to be held liable for loss, from using such evidence in showing that the insured was not misled to his detriment. Annual dues and a number of assessments had been paid by Moore. Surely, if he, in securing the insurance, knew the company was mutual, and conducted on the assessment plan, his beneficiary is not in a position to complain against members or officers with reference to the mere form of the policy. Under such circumstances there was no fraud or deception upon which to base a cause of action. To permit one member to recover from another in such a

case would violate the plainest principles of justice. See *Foster v. Pray*, 35 Minn. 458 (29 N. W. Rep. 155).

III. Were the funds of the company misappropriated by its officers? The original articles provided that ten per cent. of each assessment shall be reserved and invested in a fund, and "be used to guarantee members of this association against excessive assessments in any one year." This was amended at the members' annual meeting, October 13, 1891, and before the certificate of Moore was issued, so as to permit the use of such fund in defraying the reasonable expenses of collecting the assessments and adjusting losses, and any excess over this was to be transferred to the benefit fund. Also, any surplus derived from membership fees or dues over the requirements to properly conduct the business were to be transferred to the reserve fund. Now, the evidence fails to show that of the ten per cent. anything remained after payment of the cost of collecting assessments and adjusting losses; nor does it appear that there was any surplus of dues and membership fees after payment of the amount required to manage the business. A membership large enough to pay losses in full was very desirable to every member, and much of the expense was incurred to this end. The officers did not profit by it. Whether the efforts were legitimate we are not advised. It was not a profitable enterprise to them or the insured. The evidence utterly fails to show any misappropriation of funds. It simply indicates the receipts and amounts expended for different purposes, and as to whether these were proper the record is silent. The judgment must be REVERSED.

KINNE, C. J., took no part.