JOHN MATTHES v. IMPERIAL ACCIDENT ASSOCIATION, Appellant.

**Benefit Associations:** FUND THROUGH ASSESSMENT: *When absolutely liable for fixed sum.* Where a mutual benefit association was organized under Code 1873, title 9, chapter 1, and Acts Twenty-First General Assembly, chapter 65, and issued a policy with a weekly indemnity of a certain sum for a limited period, without qualification in the first instance, but with a subsequent provision that, if the reserve fund is exhausted when the policy becomes a claim, the amount shall be dependent upon the amount collected from the assessment to meet such claim, but the association is nowhere given any authority to make an assessment for losses. A policy holder who is entitled to recover a weekly indemnity is entitled to an absolute judgment for the amount thereof.

CONSTRUCTION OF POLICY: *Benefit associations.* The rule that a contract of insurance must be construed most strongly against the insurance company applies to purely benefit associations as well as to ordinary companies.

**Accident Insurance:** "OBVIOUS DANGER" DEFINED. Plaintiff, a house painter, was injured while using a rope sling thirty feet above his barn floor, by the breaking of a truck supporting it. The evidence

showed that he had used the apparatus before, and on this occasion examined it carefully, and was accustomed to working at great heights, on church spires. *Held*, that the danger was not, as to him, obvious.

NEEDLESS EXPOSURE TO DANGER. One injured while attempting to get pigeons in the cupola of his barn was not guilty of unnecessary exposure to danger, where they were to serve as food for himself and family.

VIOLATING SUNDAY LAW: *Burden of proof.* In an action to recover on an accident policy by one injured on Sunday in attempting to get pigeons in the cupola of his barn, it is no defense that labor is prohibited by Code 1873, section 4072, on Sunday, where it is not shown that plaintiff was not performing a work of necessity, the burden being on defendant to prove such fact.

SAME: *When no defense to policy.* If the act in which plaintiff was injured on Sunday was one within the risk of the accident policy sued on, the fact that it was performed on Sunday, in violation of the Sunday labor law, is no defense.

Appeal: REVIEW: *Party not appealing.* Where a judgment was not of the character the party was entitled to, he cannot, where he has not appealed, have a more favorable judgment on the appeal of the opposing party.

MODIFICATION FOR CLERICAL ERROR: *Costs.* Where a judgment, by reason of a clerical error, was entered for $790.00, instead of $780.00, which was not called to the attention of the court below, the supreme court will not permit a reduction to work any change in the general rule as to costs on appeal.

*Appeal from Johnson District Court.*—HON. M. J. WADE, Judge.

THURSDAY, JANUARY, 18, 1900.

ACTION on a policy of accident insurance, to recover indemnity for a total disability. The action was in equity, asking an order on the officers to pay the amount claimed out of any funds on hand, and in case of a deficiency to levy an assessment for the balance due, and for general equitable relief. There were various defenses, which will be noticed in the opinion. The court rendered judgment for plaintiff, and ordered it paid "out of any fund in the hands of the defendant company or its officers," and further ordered that

in case said fund should prove insufficient the company "proceed to exhaust any means given to it under the law" to raise money to pay the same. From the judgment, defendant appeals.—*Affirmed.*

*Baily, Ballreich & Preston* for appellant.

*Remley, Ney & Remley* for appellee.

Waterman, J.—Plaintiff was injured while attempting to get some pigeons from the cupola of a barn. He was in a rope sling that moved by means of a truck upon the track of a hay carrier some thirty feet above the barn floor. As he was moving himself along, something about the truck broke, and he fell to the floor, sustaining injuries which resulted in his total disability for a period of one year, and which will cripple him for life. The articles of incorporation, which the policy recites are a part of the contract, contained a provision that the policy should not cover disability "when caused directly or indirectly, wholly or in part, by * * * voluntary or unnecessary exposure to danger or obvious risk. * * *" It is insisted that plaintiff at the time of his fall was voluntarily and unnecesarily exposing himself to obvious danger. The facts are that plaintiff was a house painter, and was insured as such. He was accustomed to working at great heights. He had worked in a rope sling on a church spire eighty feet above the ground; had painted another spire one hundred and twenty feet high. He had used this particular apparatus before. On the occasion of his accident he examined it carefully and thought it was safe. We do not think he had reason to apprehend danger. The height that he was above the floor had nothing whatever to do with the accident. The danger was not, as to him, obvious. Was it unnecessary exposure? We think not, for the evidence shows that he was attempting to get the pigeons to serve as

food for himself and family. See *Casualty Co. v. Sittig,* 181 Ill. Sup. 111 (54 N. E. Rep. 903).

II. The accident happened on Sunday. Another provision of the articles of incorporation relieves the company from liability if the disability was incurred "while violating the law." It is insisted that when plaintiff fell he was violating section 4072, Code 1873, which prohibits labor on Sunday except in cases of necessity or for charity. We have to say on this branch of the case that it does not appear but that plaintiff wanted the pigeons for a Sunday meal, and, if so, such necessary domestic avocation as getting and preparing them would not fall within the class of labor that is prohibited by this section. The burden was on defendant to prove a violation of this condition. *Sutherland v. Insurance Co.* 87 Iowa, 505. We may further suggest on this question that the violation of law mentioned in the policy is evidently intended to comprehend acts that will avoid the risk if done at any time. They must be in the nature of contributing causes, and not mere conditions of the accident. In this case the risk would have included plaintiff's acts if done on a secular day. Therefore we can see no reason why it should not cover them when done on Sunday. See *Schmid v. Humphrey,* 48 Iowa, 652; *Gross v. Miller,* 93 Iowa, 72 (26 L. R. A. 605).

III. The policy, on its face, provides for the payment of a weekly indemnity of $15 for a period not exceeding fifty-two weeks. We have seen that plaintiff suffered a total disability, which continued for the entire time provided for. Therefore he is apparently entitled to recover the sum of seven hundred and eighty dollars. But it is asserted that defendant has no funds on hand, or means with which to pay this loss, save and except from an assessment on the members of plaintiff's class; that by the terms of the contract it is provided that, if defendant had no surplus fund on hand, plaintiff is to accept the amount of an

assessment levied upon the members of his class, in full settlement of all claims under his policy. It is further averred that plaintiff was a member of class A, and that an assessment on the members of that class produced the sum of thirty-five dollars and forty-four cents, which is the extent of defendant's liability, if it is to be held at all. Defendant claims to have been organized under chapter 1, title 9, Code 1873, and chapter 65, Acts Twenty-first General Assembly, as a mutual benefit or assessment company. But we find that it charged a fixed and level premium, and had no power to make assessments of any kind to pay losses. If there is a question, as suggested by appellee, whether an association which charges a level premium, as in this case, is entitled to the benefits of the act of the general assembly to which we have referred, we do not feel called upon to pass on it. Assuming the defendant association to be properly organized, as claimed, we shall proceed to a consideration of its acts in dealing with plaintiff. We are not concerned with the matter of what defendant might have done under its articles of incorporation, but only with what it in fact did. The policy is for three thousand dollars in the event of death, with a weekly indemnity in case of total disability of fifteen dollars per week for a limited period. This promise is made without qualification in the first instance, but towards the close of the policy we find this provision: "That, in case the reserve or surplus fund is exhausted when the policy becomes a claim, the amount to be paid shall be dependent upon the amount collected from an assessment made to meet such claim." But it will be seen further on that nowhere is the association given any power or authority to make an assessment for the purpose of paying losses. This should be borne in mind, for we are now endeavoring to ascertain what knowledge the policy-holder might have gained of his rights, had he instituted an investigation at the time he became a member. The provision for payments by members is as follows: "For the purpose of defraying the expenses of

the association, and providing the funds to pay the benefits and losses by death, there shall be paid by each member, either in cash or by note, the following sums: Section 1. As membership fees: For certificate or policy A1, $3.00; for certificate or policy A. or A1 Lim., $2.00; for certificate or policy AA, or A Lim., $1.50. Sec. 2. Each holder of a certificate or policy shall, within 30 days after the same has been issued, pay to the Sec., at the home office of the association, an advance assessment, and additional assessments thereafter as the terms of said certificate or policy shall require, or as may be required by these articles. For these purposes, as herein set forth, the members of this association shall pay to the association the following sums as an advance assessment: Members or holders of certificate or policy AA, $1.50; members or holders of certificate or policy A, $2.25; members or holders of certificate or policy A1, $3.00; members or holders of certificate or policy A Lim., $2.00; members or holders of certificate or policy A1 Lim., $3.00. Sec. 3. Each member shall be required to pay annually, in addition to the membership fee, the following sums, to wit: $6 annually on certificate or policy AA; $9.00 annually on certificate or policy A." The first two sums mentioned are to be paid but once, and by new members. Thereafter, so far as plaintiff's contract is concerned, only the level premium could be demanded. There is nothing to show that other contracts were different from this. We now turn to No. 13 of the articles of incorporation, section 1, of which reads as follows:

"Members of the association whose certificates of policies are in force shall, upon the terms and conditions set forth in the applications and certificates or policies provided in these articles, be entitled to receive, and there shall be paid to such certificate or policy-holders entitled thereto, benefits and indemnity as set forth in the following table or schedule:

| Indemnity and Death Benefits. | Pol. AA | Pol. A | Pol. A1 | Pol. A Lim. | Pol. A1 Lim. |
|---|---|---|---|---|---|
| Maximum death benefits | $1,500 | $3,000 | $5,000 | $3,000 | $5,000 |
| Total disability | 1,000 | 1,500 | 3,000 | 1,500 | 3,000 |
| Loss of both eyes | 1,000 | 1,500 | 3,000 | 1,500 | 3,000 |
| Loss of both feet | 1,000 | 1,500 | 3,000 | 1,500 | 3,000 |
| Loss of both hands | 1,000 | 1,500 | 3,000 | 1,500 | 3,000 |
| Loss of one hand and foot | 1,000 | 1,500 | 3,000 | 1,500 | 3,000 |
| Loss of right hand | 750 | 1,000 | 1,500 | 1,000 | 1,500 |
| Loss of left hand | 300 | 500 | 1,000 | 500 | 1,000 |
| Loss of one foot | 300 | 500 | 1,000 | 500 | 1,000 |
| Loss of one eye | 200 | 300 | 500 | 300 | 500 |
| Weekly indemnity | 8 | 15 | 25 | none | none |

"Provided that the benefits to be paid in any class shall not exceed the amounts specified in the above schedule; and, should the total claims that mature in any of said classes exceed the funds realized and available from the next assessment in that class, then sufficient of the funds then in the surplus fund (not in any case to exceed one-fourth of said fund) shall be taken therefrom, and used to pay said matured claims. But, should there be no funds then in the surplus fund, or should the sum so realized from said assessment, together with the sum so taken from said surplus fund, fail to pay said claims in full, then the said claims shall be paid in that proportion as the said sum or sums bear to the total claims then matured."

This is all that is said in the articles with relation to the payment of losses. Doubtless, under these provisions the association might have provided for special assessments, but it did not do so, as it concedes. There being no assessment provided for paying claims on policies what would a person taking out a certificate have a right to expect? There is nothing in the articles of incorporation which prohibits this association from issuing an absolute policy. Except as qualified by the provision with relation to an assessment that the association had never acquired power to make, this policy is absolute. The question is not, what did the company intend? but, rather, what had the policy-holder a right to think was meant? In the case of an ordinary insurance company, the contract must be construed

most strongly against it. *Miller v. Insurance Co.*, 31, Iowa, 216; *Miller v. Insurance Co.*, 70 Iowa, 704; *Insurance Co. v. Hazelett,* 105 Ind. Sup. 212 (4 N. E. Rep. 582). There is good reason for saying that this rule of construction prevails with purely benefit associations, such as this claims to be. In Niblack Mutual Benefit Societies, 284, it is said that where the contract is vague or ambiguous it is to be construed in favor of the assured. See, also, *Cook v. Benefit League of Minnesota,* —, Minn — (79 N. W. Rep. 320). This seems but a just rule, when we consider that such associations bear a dual character. There is the relation of members with each other, and of members with the organization itself. As between the assured and the company, the latter stands in something of an independent attitude, and may be held bound sometimes when it did not intend so to be. Its intent or purpose will not always be held, as a matter of law, to be known to the assured, because of his membership. *Harl v. Insurance Co.*, 74 Iowa, 39; *Davidson v. Society,* 39 Minn. 303 (39 N. W. Rep. 803, 1 L. R. A. 482); *Block v. Association,* 52 Ark. 201 (12 S. W. Rep. 477). If it be said, as doubtless it will, that the installments of premiums were referred to by the term "assessments," we have only to respond that to an ordinary reader such a signification would not likely be given that word. A premium is not an assessment. The former is a fixed and certain liability from the time the policy is accepted. The latter does not become a liability until it is imposed. The premium here charged was no more for the benefit of plaintiff than of any other person who might have been injured at the same time. Suppose six other persons insured in this company had been injured at the same time as plaintiff; the next quarterly premium receipts would be divided among them,—as we understand the contention of counsel, they would be entitled to about five dollars apiece. But, if the limitation clause in the policy as to the amount to be paid means anything, it refers to an assessment of

some specific sum to pay plaintiff's particular loss. While the amount realized would be limited by the number of members of his class, it should not be affected by the number of accidents that might occur at any given time. A policy-holder in a mutual benefit association is bound to take notice of the terms of the articles of incorporation, which are a part of the contract, but he is not obliged to discover in them some hidden meaning contrary to the ordinary signification of the language used. The policy-holder here may well be thought to have believed that the limitation of payments to the amount produced by an assessment was waived. That plaintiff expected a substantial return on his policy is shown by the fact that he continued payments of premiums during the year of his disability. It is said with relation to forfeiture of insurance contracts that only a stern necessity will induce such a construction as will cut off the rights of the assured. This principle may well be invoked here, where the return offered bears such an insignificant ratio to what was paid for, that the suggestion of such a settlement seems a grim jest; for plaintiff paid on his policy all that could have been required of him if the quota of class A had been full.

It will be seen that we think plaintiff was entitled to an absolute judgment. *Moore v. Association,* 103 Iowa, 424, does not conflict with this conclusion, for in that case an assessment was provided for in the articles of incorporation. The general prayer of the petition was broad enough to sustain this, but the judgment rendered was not of that character, and, as plaintiff has not appealed, he can have no more favorable finding in this court.

In the judgment rendered below, the amount of plaintiff's recovery was fixed at seven hundred and ninety dollars, subject to the counterclaim. This amount should be seven hundred and eighty dollars. This was manifestly a clerical error. It was not called to the attention of the trial court. The amount is small, and we shall

not permit the reduction to work any change in the general rule as to costs. These will be taxed to defendant. As modified by this reduction, the judgment will be AFFIRMED.

GRANGER, C. J., not sitting.