ATTORNEY GENERAL, *ex rel.* MICHIGAN LUBRICATOR CO.,
*v.* COMMISSIONER OF INSURANCE.[1]

1. INSURANCE — STANDARD POLICY — EXCEPTION CLAUSE — CONSTRUCTION.

> The purpose of Act No. 277, Pub. Acts 1905, is to provide a
> standard fire-insurance policy, and the sixth exception
> therein, providing that provisions adding to or modifying the
> provisions of the standard form may be embodied in riders,
> cannot be construed literally, so as to permit the standard
> form to be used as a mere frame upon which to affix riders embodying the contract of the parties.

2. SAME—CO-INSURANCE CLAUSE—STATUTE—CONSTRUCTION.

> Section 5183, 2 Comp. Laws, prohibiting insurance policies in
> which the liability of the insurer is limited or restricted because of the failure of the insured to carry other insurance,
> also prohibits policies in which the same result is reached by
> providing that the insured shall be regarded as a co-insurer
> for a certain percentage of the property.

3. CONSTITUTIONAL LAW — RIGHT TO CONTRACT — RESTRICTIONS —
INSURANCE POLICIES.

> A statute prohibiting co-insurance clauses in fire-insurance
> policies is not invalid on the ground that it imposes an unconstitutional limitation upon the right to make contracts,
> since the power, which is not denied, to make a standard
> form of policy for use in the State involves the power to
> make all the terms of the policy.

Mandamus by John E. Bird, attorney general, on the
relation of the Michigan Lubricator Company, to compel
James V. Barry, commissioner of insurance, to revoke
the license of an insurance company. Submitted April 8,
1907. (Calendar No. 22,200.) Relator held entitled to
writ June 3, 1907.

By Act No. 149 the legislature of 1881 provided for a
standard form of fire-insurance policy for use by all companies doing business in this State, that no other form

---

[1] Rehearing denied July 2, 1907.

should be in use, and for a penalty for violation of the act. A form of policy was prepared and went into general use. One of the provisions of the policy so adopted was the following:

"This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property, and the extent of the application of the insurance under this policy or of the contribution to be made by this company in case of loss, may be provided for by agreement or condition written hereon or attached or appended hereto."

The act of 1881 was invalid, and was so declared to be in *King* v. *Insurance Co.*, 140 Mich. 258, the opinion being filed May 22, 1905. Immediately the legislature (Act No. 277, Pub. Acts 1905, approved June 16, 1905, and given immediate effect) adopted the same form of policy, repealed the act of 1881, and provided for a penalty for using any other form of policy, with certain exceptions, the sixth of which is:

"*Sixth.* A company may write upon the margin or across the face of a policy, or write or print in type not smaller than long primer, upon separate slips or riders to be attached thereto, provisions adding to or modifying those contained in the standard form; and all such slips, riders and provisions must be signed by the officers or agent of the company so using them."

In the period from 1881 to 1895 insurance companies had, in certain cases in providing the extent of the contribution to be made in case of loss, required that the insured should either carry insurance equal in amount to a certain proportion of the cash value of the property insured, or themselves be treated as co-insurers to the extent of the deficit (see *Chesbrough* v. *Insurance Co.*, 61 Mich. 333), or, that the insurer should be liable for such proportion of the loss as the amount insured by it bore to some percentage or part of the total cash value of the property in-

sured.   In 1895 (Act No. 153) a statute was passed having the following title:

"An act making it unlawful for any fire-insurance company doing business in the State of Michigan, to limit or restrict its liability by providing in any policy of insurance issued by it that such liability shall be fixed, determined or proportioned by the whole amount of insurance upon the property insured, and to provide a penalty for the violation thereof."

Section 1 of this act (2 Comp. Laws, § 5183) reads as follows:

"That it shall be unlawful hereafter for any fire-insurance company doing business in the State of Michigan to provide by any insurance policy issued by it, or by any clause therein, or by any separate agreement, contract or otherwise, that the liability of said insurance company to the insured shall be limited or restricted by reason of the failure of the said insured to insure the property covered by said policy for any certain amount or proportion of the actual cash value of such property."

This statute has never been expressly repealed. After its passage a common form of rider used upon policies in insuring certain classes of risks was one known as the "percentage co-insurance clause," which reads:

" In consideration of a reduced rate of premium, it is hereby agreed that in case of loss, this company will pay only such proportion of the loss as the sum hereby insured bears to eighty per cent. of the value of the property insured, but in no case shall this company be liable for a greater proportion of any loss than the amount hereby insured bears to the whole insurance whether valid or not."

For a better understanding of the methods and effect of co-insurance, I quote, as counsel have done, from the Cyclopedia of Insurance in the United States for the years 1905–1906, pp. 112–114:

" The principle is that the entire property at risk should bear the burden of the loss of any part of it.   That can only be done when the property is either fully insured or is totally destroyed.   The co-insurance clause is only oper-

ative in partial losses, which are a large percentage of the fire losses. In these cases the owner contracts that he will either carry insurance to the limit required, or himself become a co-insurer for the deficiency. Without this clause the underwriter cannot intelligently rate any risk. Property worth $10,000 and insured for $10,000 is a very different risk from the same property insured for $1,000. In the one case the destruction of one-tenth of the property means a 10 per cent. loss, and in the other case it means a total loss. The two risks cannot properly be written at the same rate, because they do not involve the same hazard. The effect of the universal application of the principle would be that the amount of insurance would be somewhat increased, the premium rate would be reduced, while rates would be equalized as between the owners who have heretofore carried partial insurance and those who have carried full insurance. For some reason, which it would be difficult to explain, except upon the hypothesis that the property owner does not know the exact value of his property, but that he ought to be able to guess within a named percentage of it, the clause which has come into use in the United States is known as the 'percentage co-insurance clause,' and in the standard forms of policies reads:

" 'If at the time of fire the whole amount of insurance on the property covered by this policy shall be less than * * * per cent. of the actual cash value thereof, this company shall in case of loss or damage be liable for only such portion of such loss or damage as the amount insured by this policy shall bear to the said * * * per cent. of the actual cash value of such property.' * * *

" To make another illustration of the operation of the co-insurance clause in the United States policy: Suppose the percentage inserted in the clause is 80. If the whole amount of insurance at time of fire be less than 80 per cent. of value of the insured property, the owner must bear his share of any loss for the difference between the total amount of insurance carried and 80 per cent. of the value of the property insured, just as though he were an insurance company and had issued his policy for this amount. Thus, with a stock of goods worth $10,000 and an insurance of only $5,000, $8,000 would be 80 per cent. of value, which would make the owner, in case of a fire, be interested to the extent of $3,000 just as though he were an insurance company and had issued a policy insuring

his own property for $3,000. This would make the necessary $8,000 insurance, or 80 per cent. of value, he having become a co-insurer with the regular insurance company, having its policy on the risk for $5,000. A fire doing a damage say of $4,000 would be paid for in the following way:

"Regular insurance company would pay five-
    eighths of $4,000, or ----------------------------    $2,500
Owner would pay to himself (his share) --------    1,500
Making up the whole loss ----------------------    4,000

"Suppose, now, that his regular insurance had been $8,000, the co-insurance clause would cost him nothing, as the regular insurance company would pay him 'as the amount of insurance shall bear eighty per cent. of value,' which means, in this case, the regular company would pay him eight-eighths of $4,000, or his full loss.

"On the other hand, suppose the property to have been entirely destroyed, or a total loss, he would get the full amount of his regular insurance, because five-eighths of $10,000 would amount to more than the face of the policy.

"Again, suppose a man with $10,000 value is insured in the old way for but $5,000, at a rate of 1 per cent., making his yearly premiun $50, and a fire causes loss of $5,000. He collects this from the companies, while his neighbor, with the same value, hazard, and rate, gets insured for $8,000 at a cost of $80 per annum, and he has a damage of $5,000. The one gets the same as the other gets, only No. 1 has paid less than No. 2 paid for his insurance, while, if the 80 per cent. co-insurance clause were a part of both contracts, No. 1 would have received from the companies but $3,125, while No. 2, who had enough to satisfy the demands of the 80 per cent. co-insurance clause, would receive his full loss, or $5,000.

"Small fires being by far the more common, and, it may be added, by far the more expense to the companies, rates·can be made with more fairness on the basis of co-insurance than without it."

In the case of the Michigan Lubricator Company the value of the property at risk was $96,118.56. Eighty per cent. of this is $76,894.85. The loss was $30,842.28, and the insurance carried $40,000. The aggregate sum which under the contract these companies are required to pay is

$18,050.92, and is precisely the same sum as to each company interested as if the owners had carried an insurance aggregating $76,894.85. As early as May 6, 1901, the commissioner of insurance of this State considered and gave his opinion concerning the effect of the statute of 1895 upon contracts like those expressed in the rider above set out. This opinion was made known to the public and to insurance companies and has since been acted upon by them. So far as is necessary, the opinion is here given:

"The Michigan anti-co-insurance law, as you will see if you will read it carefully, is different from the law as enacted in some of the other States. I herewith quote section 1 of our law:

"'That it shall be unlawful hereafter for any fire insurance company doing business in the State of Michigan to provide by any insurance policy issued by it, or by any clause therein, or by any separate agreement, contract or otherwise, that the liability of said insurance company to the insured shall be limited or restricted by reason of the failure of the said insured to insure the property covered by said policy for any certain amount or proportion of the actual cash value of such property.'

"You will see that this simply prohibits any co-insurance clause whereby the liability of the company is limited or restricted because of the failure to carry other insurance, but the section, as I read it, nowhere prohibits a clause which makes the insured a co-insurer for any amount or percentage. In other words my understanding is that the co-insurance clause in underwriting is reached by two methods, one whereby the insured is compelled to secure other insurance to a certain amount, and, if he fails to do so, the company's liability is limited. The other method provides for the insured himself being the insurer for a certain portion or percentage of the value of the property.

"Most of the anti-co-insurance laws that I have examined prohibit not only the former, but also the latter form of co-insurance clause. As I have stated above, the Michigan law does not prohibit the latter, and therefore the percentage clause compelling the insured to carry a certain portion of the value of the property is not a violation of the law of this State, in my opinion."

The attorney general, acting upon the relation of the Michigan Lubricator Company, asks this court in this case to issue the writ of mandamus to compel the commissioner of insurance of this State to revoke the license of the Concordia Fire-Insurance Company, a foreign insurance company doing business in the State, for violation of the law of 1895 in issuing since the act of 1905 went into effect a policy with a rider in the terms stated. From the return made by the commissioner of insurance to an order to show cause it appears that on or about the 21st of February, 1907, the relator made an application to have the license of said Concordia Fire-Insurance Company revoked, stating that it desired to make a test case for the purpose of obtaining a decision of this court concerning the validity of the standard policy contract, as modified by the rider; that he was not satisfied there had been a violation of the law and therefore refused to revoke the authority of said company to transact business in the State; that while respondent is willing that a decision should be made in this proceeding, if conformable to the practice of the court, he submits to the judgment of the court the claim of the Concordia Fire-Insurance Company that this is not a suitable or proper proceeding for the purpose. It is further set out in the return, upon information and belief, that the policy in question was in the form prescribed by Act No. 277 of the Public Acts of 1905; that, if the act of 1895 is construed to forbid the percentage agreement in question, it is repealed by Act No. 277 of the Public Acts of 1905; that if the act of 1895 is construed to forbid such percentage contracts of insurance as the one in question, it is unconstitutional and void as forbidding and interfering with the freedom of contract, as depriving citizens of their rights to property without due process of law, is in conflict with article 6, § 32, of the Constitution of Michigan, and with section 10, art. 1, and section 2, art. 4, and the Fourteenth Amendment to the Constitution of the United States. The good faith of the company in the use of the rider is asserted.

*John E. Bird,* Attorney General (*Charles D. Joslyn* and *John B. Corliss,* of counsel), in pro. per.

*Alfred Lucking* (*Charles B. Obermeyer,* of counsel), for respondent.

OSTRANDER, J. (*after stating the facts*).   There is nothing in the standard form of policy prohibiting the contract in question.   In the absence of other provisions, the sixth exception found in the act of 1905 is broad enough in terms to permit it.   *Quinn* v. *Fire Ass'n,* 180 Mass. 560.   But there is another provision.   The words employed in the said sixth exception, if literally construed and applied, would permit the standard form of policy to be used as a mere frame upon which to affix riders embodying the contract of the parties.   We assume that the essential purpose of the legislation was to provide a standard policy, and that the exceptions mentioned are to be given a meaning, if that is possible, in harmony with this purpose.   It is not to this sixth exception, but to the clause of the policy which permits the extent of the contribution to be made by the company in case of loss to be provided for by agreement, that we must look, other legislation aside, for permission to make the contract in question.   This clause covers the subject, and is not enlarged by the exception referred to.   That this clause was, under the law of 1881, modified by the act of 1895, is admitted.   If the act of 1895 is alive, it modifies the same clause in the policy of 1905.

The act of 1895 applies to all policies issued by all companies doing business in the State.   The commissioner of insurance and apparently the insurance companies have regarded it as in force.   No good reason is shown for regarding it repealed.   See *Vorous* v. *Insurance Co.,* 102 Wis. 76.   The question is:   Shall it have the application which is contended for by relator ?   Assuming the law to be valid, and no attack is made upon it, the case presented is not literally within its terms.   The contract in question

does not provide in terms that the liability of the company shall be limited or restricted by reason of the failure of the insured to insure the property for any certain amount or proportion of the cash value thereof. The liability of the company is fixed whether the insured does or does not procure any other insurance. The contract, so far as the point in question is concerned, is to pay such proportion of any loss as the amount of the policy bears to 80 per cent. of the cash value of the property insured. But in effect the contract made by a rider in the statute form and the one made by a rider in the form used in this case is precisely the same. By this is meant that if the contract in the case presented was one requiring the insured to carry insurance equal to 80 per cent. of the value of the property, in default of which he should be regarded as a co-insurer to the extent of the deficit, the result to the insured in case of loss would be the same. No one disputes this conclusion. The contract in one case as well as in the other provides, in fact, that the liability of the company to the insured—that is, the sum for which the policy is issued— shall be restricted if the insured does not insure the property for a certain proportion of the actual cash value thereof. If no distinction can be made between the method employed here and the literal statute method, if co-insurance was, as seems to be admitted, aimed at by the legislature, it would be a narrow construction which would regard the statute as applying to one case and not to the other, as a law to be evaded by mere phraseology. Although the statute imposes penalties for disobedience, it may be also regarded as a remedial statute aimed at a real or a supposed mischief. Counsel have pointed out no substantial distinction between co-insurance effected in one way and in the other, and have given no convincing reason for a construction which shall regard only the letter of the law of 1895. In many States there was in the years from 1893 to 1899 similar legislation, some of it more specific than our own, directed to preventing, or regulating, co-insurance. In many of these States the law

has since been modified.    For example, it is now the law of Wisconsin—

" No such company shall require the use of any such so-called co-insurance clause or rider to be attached or made a part of any policy except at the option of the insured, and every such company shall give to every applicant for insurance the rate of premium demanded with and without such clause or rider."    1 Wis. Stat. § 1943*a*.

The necessity for a blanket policy of insurance which shall cover all of the property of large institutions, some of which have many buildings, with personal property moving constantly from one to the other and receiving an added value in each, is evident.    No fluctuating rate of premium which is fair can be arranged for such a risk. Unless a contract may be made proportioning liability upon any policy by the actual value of all the property at risk, the premium must be fixed by the extreme hazard. The construction which the commissioner of insurance has given to the law of 1895 has permitted the use of such policies in certain cases, and has met the demand for the right to make such contracts of insurance.    Such contracts are neither vicious in purpose nor fraudulent in effect so long as they are understood, and so long as the insured may choose them or the ordinary policies.    But by the terms of the Michigan standard policy, if the extent of the contribution by the insurer in case of loss may be arranged by agreement, it may also be imposed as a condition.    If it is lawful to impose such a condition, it may be imposed in all cases.    The construction of the law contended for, if agreed to, leaves it entirely in the power of insurance companies to tender no other form of contract.    I think the legislature intended to prevent such a condition of things, and, as it has not provided an alternative, the court may recognize none.    It must be held that the contract in question was in violation of the act of 1895.

I dismiss the proposition that this construction of the law imposes an unconstitutional limitation upon the right to make contracts by saying that the power, which is not

denied, to make a standard form of policy for use in the State involves the power to make all of the terms of the policy. Examples of legislation similar in character are the valued policy laws of various States.

It is stated in the brief of the attorney general that inasmuch as the construction of the law made by the commissioner of insurance has been in good faith followed by insurance companies, including the Concordia Company, it is not insisted that there shall be an immediate issue of a peremptory writ of mandamus. As all matters connected with the enforcement of the law are by the law itself placed in the control of the commissioner and the attorney general, it is sufficient for the court to state a conclusion in the premises.

McALVAY, C. J., and CARPENTER, GRANT, and BLAIR, JJ., concurred.