DAHMS & SONS COMPANY v. GERMAN FIRE INSURANCE
Co., Appellant.

**Insurance:** AVERAGE CLAUSE: STATUTES.   A clause attached to a
single insurance policy covering several buildings, providing that
in case of loss the policy shall attach to each building in pro-
portion to the value which it bears to the aggregate value of
the entire property, is not in violation of the statutes relating
to insurance; and without it there would be an increase of risk
without a corresponding increase in premium.

**Same:** CONSTRUCTION OF POLICY.   While a policy of insurance should
be construed in the sense in which the insured had reason to
understand it, still like other contracts force and effect must be
given the language used, unless by some ambiguity or craft they
are calculated to mislead the insured.

**Same:** AVERAGE CLAUSE: VALIDITY: STATUTE.   An average clause is
not directly nor impliedly prohibited by the statute prescribing
a standard form of policy, but may be termed a specification of
the property insured; and the statute authorizes the company to
attach forms or slips of description, location and specification
of the property.

*Appeal from Woodbury District Court.*—HON. FRANK R.
GAYNOR, Judge.

MONDAY, NOVEMBER 20, 1911.

ACTION on a policy of fire insurance.   On an agreed
statement of facts the court rendered judgment for plain-
tiff, and defendant appeals.—*Reversed.*

*Thomas Bates* and *Henderson & Fribourg,* for appel-
lant.

*Ferris & Iddings,* for appellee.

McClain, J.—The plaintiff, being the owner of five separate buildings situated on a parcel of ground in Sioux City, the buildings being of the aggregate value of $85,000, secured various policies of fire insurance covering all five buildings in the aggregate sum of $10,000. All the policies were of the standard Iowa form, and to each of them, with one exception, was attached, by way of rider, what is called the average clause. One of these policies being for $1,500, to which such rider was attached, was a policy issued by the defendant. Within the terms of insurance covered by all these policies, plaintiff suffered a loss by fire in respect to one of the buildings, which was adjusted by the agents of all the companies in the sum of $1,448.19. In this adjustment it was insisted for the defendant and the other companies whose policies contained the average clause that the liability of such companies was by reason of such clause limited to that proportion of the insurance which the value of the building destroyed bore to the aggregate value of all the five buildings insured, and that the liability of the defendant as one of the coinsurers was $25.56; whereas the plaintiff contended that the average clause was invalid, that each of the companies was liable for its *pro rata* portion of the loss, and that the liability of the defendant was therefore $217.23. By an amicable arrangement between plaintiff and defendant, this action is brought to recover the difference between these two sums, that is, $191.66; the object of the suit being to determine the validity of the average clause, and secure a basis on which all the claims under the policies containing the average clause may be settled.

The sole ground for insisting upon the invalidity of the average clause is that it is contrary to the provisions of our fire insurance statute, as found in the Code and Code Supplement, as follows:

Sec. 1746. · Any provision, contract or stipulation contained in any policy of insurance issued by any insurance company doing business in the state, under the provisions of this chapter, providing or stipulating · that the insured shall maintain insurance on any property covered by such policy to any extent, or shall to any extent be an insurer of · the property insured in such policy, or shall bear any portion of loss on the property insured, shall be void.   .   .   .

Sec. 1758-a.   It shall be unlawful for any insurance company to issue any policy of fire insurance upon any property in this state other or different from the standard form fire insurance policy herein set forth, except   .   .   .

2.   It may use in or upon its policy forms or slips of description, location and specifications of the property insured, together with permits upon such conditions not in conflict with the provisions of law, as may be agreed upon, for the use or storage of electricity, gasoline, explosives, or other extra-hazardous products or materials; for repairs or improvements; for the operation or ceasing to operate, and for the vacancy of the premises, and permits for hazards other than those specifically mentioned above, also a mortgagee's or loss payable clause, and other permits or riders not in conflict with law.

The average clause attached as a rider to defendant's policy is in the following language:   "It is hereby agreed that in case of loss this policy shall attach in each building in such proportion as the value of each building bears to the aggregate value of the entire property insured."

The statutory provisions above quoted prohibit (1) any stipulation "that the insured shall maintain insurance on any property covered by such policy to any extent, or shall to any extent be an insurer of the property insured in such policy, or shall bear any portion of the loss on the property insured;" and (2) any modification of the standard form of policy prescribed by statute (which form does not include an average clause), save that it may attach thereto "forms or slips of description, location and specifications of the property insured" and permits for certain

purposes, "and other permits or riders not in conflict with law."

The question submitted to us for determination is whether the average clause is prohibited under Code, section 1746, or permitted under Code Supplement, section 1758-a, as above quoted. The statutory provisions as to prorating are not here considered, for the reason that there is no controversy in regard to the prorating between the companies, and no question as to the right of each to limit its liability to the *pro rata* share of the total insurance covering the loss. This matter was determined in the adjustment, which is not questioned, save in so far as it was based on the average clause.

I. The provision above quoted, found in Code, section 1746, was apparently intended to prohibit any stipulation for co-insurance, such as fire insurance companies sometimes insert in their policies. See Rich-

1. INSURANCE: average clause: statutes.

ards, Insurance Law (3d ed.), section 242. Similar statutes are found in other states, and under them any stipulation for co-insurance is invalid. *Attorney-General v. Commissioner of Insurance,* 148 Mich. 566 (112 N. W. 132). Where there is no such statutory prohibition, various forms of co-insurance clauses have been in use. See Richards, Insurance Law (3d ed.), 727n-729. It is evident, however, that the statute is more specifically directed against a stipulation requiring the insured to maintain insurance on the property up to a stipulated percentage of its value; the effect of such a stipulation being that in case of partial loss the owner can have only a partial recovery, although the total amount of his insurance exceeds the total amount of the loss. See the opinion in *Attorney-General v. Commissioner of Insurance, supra,* in which the nature of such a clause is fully discussed. The statute was evidently not intended to prohibit an arrangement by which the insured should carry a part of the risk. If he maintains insurance up to the required percentage,

he still, in the case of total loss, carries the risk in excess of the percentage specified; but in case of a partial loss he gets full indemnity, if the total amount of the insurance exceeds the amount of the loss; whereas, under a coinsurance clause requiring him to maintain insurance up to the specified percentage, he does not secure full indemnity for such partial loss unless he has the full amount of the insurance required.

The average clause is used for a wholly different purpose. It is primarily intended to apply to manufactories or storehouses, the contents of which are covered by a blanket policy; the contents being insured in whichever one or more of the various factories or storehouses described it may be located at the time of the loss; the particular amount of such contents in any particular building not being determinable at the time the policy is issued, but only ascertainable after the loss. 1 Biddle, Insurance, section 2; Richards, Insurance Law (3d ed.), 727; Clement, Fire Ins. 511. But, even as applied to several buildings covered by a blanket policy, it does not operate as a stipulation for co-insurance.

We think that an illustration will make plain the distinction above made, and an illustration of the effect of a single policy on several buildings with an average clause attached will be entirely applicable to the present case, for all the policies were treated in this adjustment as constituting an aggregate amount of insurance. Suppose, therefore, that the plaintiff, desiring to secure insurance on his five buildings of different values and of the aggregate value of $85,000, has taken one policy in the defendant company for $10,000. Without an average clause attached, he would be entitled to indemnity to the extent of $10,000 for a partial loss on any one of such five buildings; that is to say, under such a policy, without an increase of premium, the company would have incurred five times the risk of loss which it would have incurred under specific

policies in proportional amounts on each of the five buildings; the same rate of premium being paid. The company could only avoid this increase of risk without increase of premium by attaching an average clause, the simple effect of which would be that as to each building its risk should be in the proportion which the value of the specific building bore to the total value of all the buildings. If this proportion had been determined beforehand, there would certainly have been no invalidity in the stipulation. It is usual to apportion the risk in one policy covering two or more buildings on the same premises, so as to limit the liability to a stipulated amount as to each building. For instance, under a policy for $3,000 on a house and barn on the same premises, it is usual to stipulate that a certain amount, say $2,500, shall be applied to the house, and $500 to the barn; and in case of even a partial loss to the barn in excess of $500 the insured will be limited to that amount of indemnity, although he is in fact carrying $3,000 on the entire property. A rider to that effect is clearly contemplated by the portion of Code Supplement, section 1758-a, above quoted. A blanket policy on several buildings with an average clause attached differs from a blanket policy on several buildings with a specification of the indemnity provided as to each building only in this respect: The indemnity provided as to each building, instead of being fixed at a stipulated amount, is made to depend upon the proportionate value which each particular building bears to the total value of the buildings; that amount to be ascertained after the loss, instead of determined at the time the policy is issued. In this there is nothing unreasonable, for the values may fluctuate during the term of the policy by reason of deteriorations or improvements. The insured has specific insurance on each building to that proportion of the value of that building which its value bears to the value of all the buildings covered. In the event of a partial loss on any one building, he gets full

indemnity, provided the insurance appropriated to that building is sufficient to cover the loss; and there is therefore no question of co-insurance.

The argument for plaintiff seems to be that by the general nature and terms of the policy it was misled into thinking that it was securing indemnity for loss as to any one of its five buildings to the extent of $10,000 as effectually as though it had taken a policy for $10,000 on that building alone. But, in the absence of any allegation of fraud, concealment, or misrepresentation, we would not be justified in assuming that it could reasonably have so understood the contract. This is not a case where, as counsel contend (quoting language found in *Matthes v. Imperial Acc. Ass'n,* 110 Iowa, 222), "the return offered bears such an insignificant ratio to what was paid for that the suggestion of such a settlement (as was proposed) seems a grim jest." The plaintiff got just what it paid for. It could not have supposed that the company was willing to give it insurance on five separate risks at the same rate that it would pay for a like amount of insurance on one risk. Suppose, for instance, that the owner of five farmhouses on as many different farms, and therefore not exposed in any way to the peril of destruction by the same fire, each of the farmhouses being worth $2,500, should desire to insure each of them against loss to the extent of $2,000, would he be justified in assuming that he could get a blanket policy of insurance on all five houses, which would afford him the same protection against partial or total loss, on the usual terms on which a policy for that amount would be issued covering one house? And if he found in his blanket policy an average clause, would not he be fairly required to understand that he had in fact insurance on each house only to the extent of $400?

It is true that, as counsel argue, a policy of insurance is to be construed in favor of the insured in the sense in which he had reason to understand it; but policies of in-

surance, like other contracts, must be so construed as to give force and effect to the language used, unless by reason of some ambiguity or craft they are calculated to mislead the insured. "While we are authorized to construe the policy, we are not at liberty to strike out absolutely a carefully inserted and detailed provision thereof." *Insurance Company v. Ayers,* 88 Tenn. 728 (13 S. W. 1090). In the case just cited, it was held that where a policy for $1,000 was placed upon an aggregate valuation of $3,510, distributed over ten separate and distinct parcels of property of varying estimated values, and the policy provided that it should cover *pro rata* on each of the items, the measure of the company's liability for loss as to one of the items must be determined upon the basis of the relation of the value of that item to the aggregate value of the property, so that for a total loss of that item there could not be a recovery of more than its proportional value of the total insurance. The case seems very analogous to the one before us. Further to the effect that where there is no ambiguity or irregularity in the provisions of the policy the liability of the company should be determined by its plain terms, see *Nelson v. Traders' Ins. Co.,* 181 N. Y. 472 (74 N. E. 421).

*2. Same; construction of policy.*

The average clause is not a new device resorted to by insurance companies to avoid the provisions of our statutes. While there are meager references to it in the text-books, and, so far as we can find, no cases specifically relating to its application, it was fully described prior to the enactment of our statute in Biddle on Insurance, a standard text-book to which we have already referred. See, also, Bunyon, Fire Ins. 3, 102, 119; Ellis, Insurance (2d ed.), 55. So far as we can discover, it is as old as the co-insurance clause; and if the Legislature had intended to prohibit its use in the section of the Code first above cited (embodying a statute passed in 1894) some unambiguous reference to it would surely have been made.

II. If the average clause is not prohibited by Code, section 1746, then there is nothing in Code Supplement, section 1758-a-d, which prescribes a standard fire insurance policy for Iowa, forbidding its addition by rider to the standard form; for it is not only provided in the portion of that statute above quoted that the company may attach "forms or slips of the description, location and specifications of the property insured," but also that it may attach "other permits or riders not in conflict with law." The average clause is not specifically prohibited by law, and certainly if it may be included under the term "specifications of the property insured," then it is not prohibited by implication. As already suggested, such a clause amounts to a specification that, as to each of the separate items of property insured, the risk shall be a proportionate share of the total risk, determinable by the ratio which the value of that item bears to the entire value of the property insured. Neither the language nor the policy of the statute, therefore, is inconsistent with the addition of the average clause by rider to a blanket policy, framed in the terms required by the Iowa statute. Under a New York statute providing for a standard policy of insurance, the Court of Appeals of New York has said: "It is quite competent, in so far as the provisions of a policy are concerned, to modify, or to restrict them, or to describe more particularly the actual risk assumed, by a written indorsement upon the instrument. The Legislature left the parties free in that respect." And it was said, as to a particular written indorsement made on the standard form: "This clause of the contract is plain; it is not unreasonable as a limitation of the insurance hazard, and, unless the court is to make a new contract between the parties, it should be enforced." *Nelson v. Traders' Ins. Co., supra.* In this case we reach the conclusion that the average clause added by way of rider is not in violation of any statutory provision, and is not

3. Same: average clause: validity: statute.

unreasonable as applied to the subject matter.  It should therefore be given its intended effect.

The trial court erred in holding the average clause to be void as prohibited by statute, and should have rendered judgment in defendant's favor.  The cause is remanded for judgment in accordance with the views expressed in this opinion.—*Reversed.*