UNITED STATES COOPERAGE & HANDLE COMPANY, Respondent, v. FIREMEN'S FUND INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals, March 2, 1915.

1. **FIRE INSURANCE: Validity of Average Clause.** A clause in a fire insurance policy covering the contents of several warehouses, that the "policy covers in each of the warehouses in a proportion that the value in each bears to the total value in all," is valid and is not inhibited by any provision of the Revised Statutes of 1909.

2. ————: **Average Clause: Coinsurance: Apportionment of. Loss.** Where a number of fire insurance policies covering the contents of several warehouses provided that the liability of insurer shall not be greater than the amount "hereby insured

shall bear to the whole insurance" and several of the policies also provided that the "policy covers in each of the warehouses in a proportion that the value in each bears to the total value in all," it was proper, upon a loss occurring, to first ascertain the amount of insurance carried on the property destroyed, under the policies that contained the "average clause," by taking so much of the insurance specified in such policies as the value of the property destroyed bore to the total value of the property in all the warehouses, and then to apportion hte loss˙ among all the insurers in proportion to the insurance carried by each on the property destroyed, conformably to the coinsurance clause common to all the policies.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker,* Judge.

REVERSED.

*Fyke & Snyder* for appellant.

*J. L. Fort* for respondent.

ALLEN, J.—This is an action upon a fire insurance policy. On April 15, 1910, the defendant insurance company issued to plaintiff a policy of insurance in the amount of $5500 on plaintiff's stock of staves in eleven sheds, or warehouses, numbered from one to eleven inclusive, and on certain other property as well, situated on plaintiff's premises at Malden, Missouri. On October 26, 1910, a fire occurred by reason of which the stock of staves in one of these sheds, to-wit, shed No. 9, was damaged in the sum of $1618.30. At the time of the fire, the value of the stock of staves in this shed was $1813.30, while the total value of such stock in all of the warehouses was $31,372.77. Defendant's policy contained, *inter alia,* the following provision:

"This company shall not be liable under this policy for a greater proportion of any loss on the described property than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such prop-

erty, and the extent of the application of the insurance under this policy or of the contribution to be made by the company in case of loss may be provided by agreement or condition written herein or attached or appended hereto."

The policy also contained the following stipulation, hereinafter referred to as the "average clause," viz:

"It is understood that this policy covers in each of the warehouses in a proportion that the value in each warehouse bears to the total value in all the warehouses."

At the time of the loss plaintiff's stock of staves in the eleven buildings mentioned was insured in eleven companies, one of which had issued two policies thereon, making in all thirteen policies covering such stock; all of said other policies, except one, also covering other property such as buildings, fixtures, etc. We are here, however, directly concerned only with the loss on the stock of staves contained in the warehouse known as shed No. 9. The total insurance on the entire stock of staves was $23,574.68.

Each of the twelve other policies likewise contained the provision above quoted from defendant's policy, to the effect that the company would not be liable for a greater proportion of any loss than the amount thereby insured should bear to the whole insurance. Seven of them also contained, either *verbatim* or in substance, the above-mentioned "average clause" contained in defendant's policy, while the remaining five thereof did not contain such clause.

Subsequent to the fire an adjustment was made, in which it is said that defendant did not participate. In apportioning the loss among the insurance companies, the adjuster failed to take into account the fact that some of the policies contained the so-called average clause while others did not, and apportioned the loss *pro rata* among all of the companies interested. Af-

terwards four of the insurance companies, including defendant, caused a new apportionment of the loss to be made, which had the effect of reducing the liability under each policy containing the average clause and of increasing that under each of the policies which did not contain such clause. Defendant has paid the amount which by this second apportionment was found to be due under its policy, and this suit is to recover the difference between this sum and that which the first apportionment showed to be due from defendant, such difference being $165.02.

It is unnecessary to refer to the pleadings for reasons that will appear. The cause was tried upon an agreed statement of facts, by the concluding paragraph of which it is agreed as follows:

"If the court shall hold that the average clause is invalid, and that the first apportionment was correct then judgment shall be rendered for plaintiff. If the court shall hold that the average clause is valid and the last apportionment is correct, then judgment shall be rendered for defendant."

The trial below, before the court without the intervention of a jury, resulted in a judgment for plaintiff, and defendant prosecutes the appeal.

Upon what theory the court proceeded in rendering judgment for plaintiff does not appear. Respondent suggests no reason why the so-called average clause should be held to be invalid. There is no contention that it comes in conflict with any statute in force at the time, nor do we perceive that it does. Certainly no express statutory inhibition against a clause such as this in a fire insurance policy appears, and we see nothing in the insurance statutes then in force (Rev. Stat. 1909) which by implicaton or intendment could have the effect of invalidating such a provision in a contract of insurance.

The case is said to be one of first impression in this State, and it does appear that the precise question

involved has not been passed upon by our courts. Such a clause, however, is by no means a new thing in fire insurance policies, but on the contrary is said to be as old as the co-insurance clause. [See Dahms & Sons v. Insurance Co., 153 Iowa, 1. c. 175.] We have been referred to no authority, and have found none, holding such a clause invalid; and we know of no good reason why such a ruling should be made, in the absence of any statutory provision compelling it.

Considering defendant's liability as unaffected by other insurance on the property, it is apparent that this clause, if enforced, has the effect of making defendant's policy cover the stock in any one shed only to the extent of such fractional part of defendant's whole insurance on stock as the value of the stock in such shed at the time of the loss might be of the total value of the stock then in all of the sheds. Though the total insurance named in defendant's policy was $5500, all of this did not apply on the stock of staves, but a minor part on buildings, etc.; and the effect of the average clause would be to distribute this insurance on stock among the different warehouses so that the amount thereof covering the stock in any one warehouse would be the above-mentioned fractional part of the whole of such insurance.

It was on this basis that the amount of defendant's insurance on the damaged stock, and that of other companies having like policies thereon, was determined by the second apportionment; that of the remaining companies (whose policies did not contain the average clause) being the total amount of insurance on stock vouchsafed in their respective policies. Having thus determined the amount of insurance carried by each company on the damaged stock, the loss was apportioned among all of the companies in proportion to the insurance thus found to be carried by each thereon, in accordance with the co-insurance clause first above quoted, common to all of the policies.

Respondent's argument, as we gather it, appears to be that all of the policies should be placed upon the same basis, for the reason that by this means alone an equitable apportionment of the loss may be made among the different companies. The sole authority relied upon by respondent is the decision of the Supreme Court of Vermont in Chandler v. Insurance Co., 70 Vt. 562. The ruling in that case is sufficiently indicated by the brief syllabus thereof, which is as follows:

"When there is a total loss of property covered by several policies, some specific and some blanket, and the total loss is less than the total insurance, the proportion of blanket insurance to each item is the pro portion of the value of the whole property to the value of that item. The blanket policy being thus converted into a specific policy, each company, as the policies provide, must bear such proportion of the loss as the sum insured by it bears to the total insurance."

The case is said to be "on all fours" with this, and to furnish authority for sustaining the first apportionment and affirming the judgment. But if we are asked to regard the policies not containing the average clause as having been converted into policies having such clause, and thus find the amount of insurance carried by each company on the damaged stock before apportioning the loss, our answer is that to do so would be to do violence to the language employed in the policies. The Supreme Court of New Jersey, in Grollimond v. Insurance Co., 82 N. J. Law Rep. 618, refused to follow the "Vermont rule," applied in the Chandler case, in part upon the ground that lawful contracts of insurance, when the terms thereof are not ambiguous or doubtful, should be enforced as made. [See also Schmaelze v. Insurance Co., 75 Conn. 397, 60 L. R. A. 536.] We see nothing to justify the application of this rule to the facts of this case. The insured would be fully indemnified under either apportionment; and the policies themselves appear to furnish

the correct basis for apportioning the loss among the various companies.

Without the average clause defendant's policy would here attach to the contents of any shed to the extent of the total amount of its insurance on stock. As the stock was located in eleven different sheds, defendant, without increase of premium, would incur many times the risk of loss which it would incur under specific policies issued in proportional amounts on the contents of the separate buildings. Presumably the premium paid was for carrying the risk which by the terms of defendant's policy it agreed to carry. The greater hazard could be readily avoided by attaching a clause of the character in question. There is nothing unreasonable in this, the effect being the same as though the proportion of the stock in each shed had been determined beforehand and specific policies issued covering the various items. [See Dahms & Sons Co. v. Insurance Co., 153 Iowa, 168; Insurance Co. v. Ayers, 88 Tenn. 728, 13 S. W. 1090.]

The second apportionment appears to be proper, in that it first finds the amount of insurance on the contents of the particular shed in question, under each of the respective policies, precisely according to their terms; and the loss is then apportioned among all of the companies in such proportion as each company's said insurance on such contents bears to the total insurance thereon, as the policies provide. Thus effect is given to both the average clause and to the co-insurance clause in defendant's policy. This is the contract of insurance which the parties made. The language employed is not of doubtful import; and it is not our province to make a different contract for the parties, or to modify that which they made. [See Page v. Insurance Office, 74 Fed. 203.]

We are of the opinion that under the agreed statement of facts plaintiff was not entitled to recover. The

judgment below will therefore be reversed. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.