JOHN BREEN, Appellee, v. GREAT WESTERN ACCIDENT INSURANCE COMPANY, Appellant.

**INSURANCE: Death From Asphyxiation—Construction of Policy.** A
1 distinct policy provision which promises specified indemnity for *loss of time* resulting from sickness, and therein classifies injuries from "gas" as "sickness," does not modify or limit another distinct policy provision which promises specified indemnity for *loss of life or limb.*

**JUDGMENT: Standing on Demurrer.** Plaintiff is presumptively entitled
2 to judgment, when defendant elects to stand on his overruled demurrer to plaintiff's entire cause of action,—at least, defendant has no grounds for complaint if judgment is so entered, and the ruling on the demurrer is affirmed on appeal.

*Appeal from Muscatine District Court.*—M. F. DONEGAN, Judge.

NOVEMBER 23, 1920.

REHEARING DENIED FEBRUARY 16, 1921.

ACTION upon a policy of accident insurance for the loss of life of the insured. The policy was set out in the petition. There was a demurrer to the petition, predicated upon the terms of the policy. The demurrer was overruled. The defendant electing to stand thereon, judgment was entered for the plaintiff. The defendant appeals, both from the ruling upon the demurrer and from the judgment.—*Affirmed.*

*O. B. Hartley* and *Nourse & Nourse,* for appellant.

*J. F. Devitt,* for appellee.

EVANS, J.—I. The defendant company insures its policyholders against loss and disability resulting from accident or sickness. It provides specific benefits for loss of life or loss of bodily organs, and monthly benefits for loss of time resulting from accidental disability or from sickness. It will be sufficient for the purpose of this discussion to set forth a part of the policy. The following is a copy of the first three sections thereof:

1. INSURANCE: death from asphyxiation: construction of policy.

"This policy provides benefits for loss of time by sickness; or for the loss of life, limb, sight, or time by accidental means to the extent herein provided.

"[Oak Leaf]

"Principal Sum.                                              Maximum Sum.
   "$1,000.00            "Great Western            $2,000.00
                 "Accident Insurance Company.
                "Des Moines, Iowa, U. S. A.
                      "Section I.
                   "Insuring Clause.

"In consideration (1) of the payment of the policy fee of five and no/100 Dollars, and (2) of all the agreements and representations contained in the application herefor, a copy of which is attached hereto and made a part hereof, and (3) of the con-

ditions and provisions contained herein and indorsed hereon, the Great Western Accident Insurance Company (hereinafter called the Company) hereby insures Kathryn L. Breen (hereinafter called the insured), of Chicago, state of Illinois, by occupation saleslady, office or salesladies' duties, handling light goods at counter, under classification 'AA' from 12 o'clock, noon, standard time, at the place of residence of insured on the date of issuance hereof, and the payment herefor in cash or its equivalent, until 12 o'clock noon, such standard time, of the first day of May, 1919, and for such further periods stated in the renewal agreements, as the renewal premium of $1.75 per month, paid by the insured in advance, will maintain this policy in force: (1) Against the effect of personal bodily injury which produces disability from the date of the accident, and which, exclusive of all other causes, is caused solely and directly by external, violent and accidental means (suicide, or any attempt thereat, intentional self-inflicted injuries, or disappearance, while either sane or insane, are excluded from benefits hereunder); and (2) against disability resulting from sickness, the infection, inoculation and cause of which is contracted not less than thirty days after the issuance and acceptance of this policy or not less than ten days after reinstatement of same; said insurance to be paid in the amounts and under the conditions herein provided.

"Section II.

"Specific Benefits.

"If such accidental injury as defined in the insuring clause hereof, shall produce immediate and continuous total disability, and shall, within ninety days from the date of accident, result in one of the losses specified in this section, the company will pay to the insured or the beneficiary, in lieu of all other indemnity, as follows, to wit:

"1.   Life one thousand dollars.   The principal sum.

"2.   Both hands (complete severance at or above wrists). The principal sum.

"3.   Both feet (complete severance at or above ankles). The principal sum.

"4.   Both eyes (entire and permanent destruction of sight). The principal sum.

"5.   One hand and one foot (complete severance at or above wrist and ankle).   The principal sum.

"6.   One hand (complete severance at or above wrist). One half the principal sum.

"7.   One foot (complete severance at or above ankle).   One half the principal sum.

"8.   One eye (entire and permanent destruction of sight). One fourth the principal sum.

"Section III.

"Benefits for Loss of Time.

"1.   *Monthly Accident Payment.*   If such accidental injury as defined in the insuring clause hereof (not including injuries resulting in losses named in Section II hereof) shall totally and continuously disable the insured from performing any and every kind of duty pertaining to insured's occupation, or to any occupation in which the insured may engage, the company will pay sixty & no/100 dollars per month (but not to exceed the average salary or earnings of the insured) during the period of such total disability, but not exceeding twenty-four consecutive months; or, in case such injury causes a material but not total loss of time, or if total disability does not immediately follow the accident, such disability indemnity shall accrue at a rate, according to the actual loss of time, not less than one fourth and not exceeding one half of the payment herein provided for total disability, and for a period not exceeding six consecutive months.

"2.   *Monthly Sickness Payment.*   If the insured shall suffer bodily disease or illness such as defined in the insuring clause hereof, except as hereinafter stated, the company will pay for the loss of time necessarily resulting from such sickness at the rate of sixty & no/100 Dollars per month (but not to exceed the average salary or earnings of the insured) for a period not exceeding six consecutive months, for the number of consecutive days that the insured is *totally disabled* and wholly and continuously confined within the house and prevented from performing any and all duties pertaining to insured's occupation, and while regularly visited within the house by a licensed physician; or if the insured shall be *totally disabled* although not confined to the house and while under the care of a licensed

physician by reason of such disease or illness, the company will pay one half the amount provided herein for confining sickness, not exceeding two consecutive months, but such payment for both confining and nonconfining sickness shall not exceed six consecutive months for any one sickness.

"3. *Covered as Sickness.* Any disability or loss hereinbefore defined, caused by or resulting wholly or in part, directly or indirectly, in or from carbuncles, boils, felons, abscesses, ulcers, infection (external infection of accidental injuries such as defined in Section I, the insuring clause hereof are construed as accidents), cancer, gas, poison, anæsthetics, embolism, fits, vertigo, hernia, sunstroke, freezing, lame or sprained back, strains, sciatica, lumbago, over-exertion, dementia or insanity or any injury complicated with disease, or any disability or loss where there is no wound or contusion visible to the eye to show a violent and external cause of such disability, then and in every such case, said disability and any claim therefor shall be classified and treated as sickness and shall be subject to the provisions, conditions and limitations governing sickness insurance as set forth in Section III, Paragraph 2 hereof, the original cause of such disability or loss notwithstanding.

"4. *Double Benefits.* If such accidental injury as defined in the insuring clause hereof results in one of the losses specified in Section II or Paragraph 1 of Section III hereof (1) while the insured is a passenger within the inclosed part of any railway or street railway passenger car, or (2) while a passenger on board a steam vessel licensed for the regular transportation of passengers, and such injury shall be the result of the wrecking of such car or vessel, the company will pay double the amount provided in said section or paragraph for such injury or loss."

The demurrer is predicated upon the foregoing Section III, and particularly upon Paragraph 3 thereof. The petition set forth that the insured was accidentally asphyxiated by the escape of gas in her sleeping room, which resulted in her immediate death. The demurrer was put upon the following ground: That said petition shows upon its face that the said Kathryn L. Breen's death was caused by "gas," and Exhibit A of said petition stipulates, among other things, that "any disability or loss hereinbefore defined, caused by or resulting wholly or in

part, directly or indirectly, in or from \* \* \* gas \* \* \* or any injury complicated with disease, or any disability or loss where there is no wound or contusion visible to the eye to show a violent and external cause of such disability, then and in every. such case, said disability and any claim therefor shall be classified and treated as sickness and shall be subject to the provisions, conditions and limitations governing sickness insurance as set forth in Section III, Paragraph 2 hereof, the original cause of such disability or loss notwithstanding.''

The question presented is whether the clause quoted in the demurrer from the policy is applicable to Section II thereof. As already noted, the policy provides for different kinds of insurance.  Indemnity for the different kinds of insurance is provided for by different plans.  Under the quoted provision, ''said *disability* and any claim therefor shall be classified and treated as sickness and shall be subject to the provisions, conditions and limitations governing sickness insurance.''    Stress is laid by appellee upon the use of the word ''disability'' at this point, and upon the absence of the word ''loss'' from conjunction therewith.

Though we reach the conclusion that the ruling upon the demurrer was right, we do not lay controlling stress upon this particular feature of the language of the policy.    The expression ''disability or loss'' appears conjunctively in other places in the same paragraph, and the two words appear to be treated therein as synonymous.    The disability to be indemnified is only such as results in *loss of time*.    The disability benefits resulting either from accident or sickness are predicated upon loss of time.   Loss of time is *''loss.''*  If, therefore, the word ''loss'' had appeared in conjunction with the word ''disability'' at this point, it would not necessarily indicate that it had reference to a *death loss*.   We must look, therefore, to the policy as a whole, in order to determine the fair construction to be adopted at this point.   To put the question in another way: Does the word ''loss,'' used in the conjunction ''disability or loss,'' refer to the *loss of time* resulting from disability, or is it used in a generic sense, to include *all* loss of every kind indemnified by the policy? The appellant contends, in effect, for the latter construction. If the word were to be used in so broad and comprehensive a

sense, why should it be conjoined with the word "disability?" The fact that it is not used at all in this paragraph, except in conjunction with the word "disability," is of itself very suggestive that its use was intended in the related and restricted sense.

The formulation of the policy, whereby it deals with the different classes of indemnity in separate *sections,* is not without significance along the same line. It will be noted that Section II states its subject as *"Specific Benefits."* These are eight in number, and include loss of life and loss of hand, foot, or eye. As to these losses, specific sums are fixed, and no account is taken of *loss of time* by reason of any resulting disability therefrom.

Section III announces its subject as "Benefits for Loss of Time." Paragraph 1 of this section states its subject as "Monthly Accident Payment." Paragraph 2 thereof states its subject as "Monthly Sickness Payment." Paragraph 3 states its subject as "Covered as Sickness."

The first two paragraphs of Section III assuredly deal wholly with indemnity for *loss of time.* Is there fair warrant for saying that Paragraph 3 of Section III deals with any other basis of indemnity than loss of time? Does it reach back and embrace the subject-matter of Section II? The words "hereinbefore defined" might be construed as reaching back to the preceding sections, or they could be construed as reaching back to Paragraphs 1 and 2 of Section III. We note that, in one place, this paragraph does refer back to the subject-matter of Section I. It does so, however, by express reference to "Section I" in terms. It is significant, also, that Paragraph 4 of this section does refer to the subject-matter of "Section II," and it does so in specific terms. Now, if it was necessary to refer to Section II in specific terms, in order to include its subject-matter in Paragraph 4 of Section III, it would seem to be quite as necessary to have done so in order to include its subject-matter in Paragraph 3. The fact, therefore, that Section II is referred to in Paragraph 4 in specific terms, and that Section I is referred to in specific terms in Paragraph 3, and that Section II is *not* referred to in specific terms in Paragraph 3, furnishes much reason for saying that Paragraph 3 has no reference to the specific benefits provided by Section II. To say the least,

the policy is capable of such a construction. We think that such is the construction which a policyholder, and perhaps an insurance solicitor, would most probably put upon the policy. Ambiguity in any part of the policy must operate in favor of the policyholder. We reach the conclusion, therefore, that Paragraph 3 of Section III must be construed as dealing with "benefits for loss of time;" this being the subject-matter of Section III, as announced in the heading thereof. The demurrer was, therefore, properly sustained.

II. Appellant complains because the trial court entered judgment for the plaintiff after the defendant had elected to stand upon its demurrer and the ruling of the court thereon.

2. JUDGMENT: standing on demurrer.

The argument on the point is very brief, and fails to make clear upon what ground the complaint is based. After the ruling on the demurrer, the defendant elected to stand upon it. This was an affirmative waiver of its right to plead over. It amounted to saying that, if the demurrer was not good, there was no defense. What could the trial court do? Could the defendant, by electing to stand upon its demurrer after an adverse ruling thereon, stop the proceedings, and forbid the plaintiff to proceed with his case? The defendant has a right to supersede the judgment until its demurrer is heard on appeal. If the demurrer were sustained on appeal, that would, of course, reverse the ruling below, and of itself would set aside the judgment. In such event, we should have no occasion to consider this ground of reversal. In view of our affirmance of the ruling below, we affirm the right of the plaintiff to judgment. And this would be so whether judgment had been entered below or not. The plaintiff, therefore, has nothing more than he is entitled to in any event.

To put the matter briefly, the defendant having elected to stand, after the adverse ruling, the plaintiff was presumptively entitled to judgment on the pleading. Whether, upon defendant's application, the court could have made an appropriate order to stay proceedings, upon proper conditions or otherwise, we need not consider. No such application was made. The judgment below is—*Affirmed*.

WEAVER, C. J., PRESTON and SALINGER, JJ., concur.