CHRISTINA SIEVERTS V. THE NATIONAL BENEVOLENT ASSOCIATION OF MINNEAPOLIS, MINNESOTA, Appellant.

**Presumption:** LEX LOCI. Iowa law attaches no penalty to misrepresentations as to age in applying for life insurance other than the payment of the premium for the true age. Sixteenth General Assembly, section 3, chapter 55. *Held*, it will be presumed, in the absence of evidence, that a Minnesota life insurance contract is governed by the same law.

**By-Law:** CHANGE. An insurer cannot add a health certificate to the requirements for reinstatement, by a change in by-laws made after the issuance of a policy, though the member has agreed "to conform to all lawful regulations and by-laws made for the government of this association."

MISREPRESENTATIONS. A statement that one is "in good health" is not shown to be false by proof that insured had a cold when he made said statement and that he died a few weeks later of cancer of the stomach, which later disease was not discovered until shortly before his death.

*Appeal from Pottawattamie District Court.*—HON. W. I. SMITH, Judge.

TUESDAY, OCTOBER 15, 1895.

Suit in equity to compel defendant, a mutual life insurance company, to levy an assessment to cover the amount of two certain certificates of membership issued to plaintiff upon the life of Fritz Sieverts. The defense is an alleged misrepresentation by the assured as to his age, in the application for insurance; and, second, that Fritz Sieverts allowed an assessment made by the company May 1, 1892, to go unpaid, and his certificate to lapse, and thereafter was guilty of fraud, and misrepresentations as to his health, in an application for reinstatement. Trial to the court. Decree for plaintiff, and defendant appeals.— *Affirmed.*

*Geo. F. Getty* and *O. D. Wheeler* for appellant.

*Flickinger Bros.* for appellee.

Deemer, J.—The defendant is a life insurance association organized under the laws of the state of Minnesota, with its principal place of business at Minneapolis. On the ninth day of August, 1888, Fritz Sieverts, residing at Neola, Iowa, made application to defendant for membership in the company, and for insurance upon his life in a sum not exceeding five thousand dollars, payable, in case of his death, to his wife, the plaintiff herein. This application was received by defendant company, at Minneapolis, on August 11, 1888, and the same was approved, and certificates issued to Sieverts on August 14, 1888. Sieverts died in Montana on November 28, 1892, of cancer of the stomach. This suit was brought to compel defendant company to levy an assessment upon its members to pay the amount called for by the certificates. The defense, as before stated, is: *First.* That the assured misrepresented his age, in his application for insurance, in that he stated in the application he was born in the year 1843. *Second.* That on the first day of May an assessment was levied by defendant company upon each of its members to pay death losses, and that Sieverts failed to pay the same when due; that afterwards he paid the same, under a provision for reinstatement, and furnished a health certificate, which was required as a condition for reinstatement, but that the health certificate was false and untrue; and that the policy became void by reason of these misrepresentations.

I. The application was not made a part of the policy, as required by the laws of this state; and it

is insisted that the misrepresentations as to age, even if made, cannot be taken advantage of by the defendant. Defendant contends that the contract was made in Minnesota, and is to be governed by the laws of that state; that in Minnesota there is no requirement that the application be attached to or made a part of the policy; and that the representation made by the assured was a warranty, which, if untrue, avoids the policy. The plaintiff, by motion, attacked that part of the answer pleading the misrepresentation as to age, on the theory that the contract was made in this state, and that the defense here interposed was not permissible, because of the provisions of McClain's Code, section 1733; but the lower court overruled it, holding that the contract was made in Minnesota. No appeal was taken from this ruling, and we must accept it as being correct. We look then to the testimony relied upon to prove the alleged misrepresentation, and find that it consists of alleged statements made by the assured after the issuance of the policy—which, as we have seen, made plaintiff the beneficiary—as to the time of his birth, and as to his health. Although a solution of the question is not necessary to a determination of the case, as we view it, it is extremely doubtful whether such testimony is admissible. See *Tessmann v. Supreme Commandery* 61 N. W. Rep. (Mich.) 261; Niblack Mut. Ben. Soc., section 377; Bacon Ben. Soc., section 460. But, however this may be, our statutes (Acts Sixteenth General Assembly, chapter 55, section 3) provide, in substance, that when it shall be discovered that an assured has misstated his age, in an application for insurance, the company issuing the policy shall be permitted to demand and collect the difference of premium, if any, which would be due and payable on account of the true age of the assured, from year to year, according to the rates of premium of the

company upon which the policy was issued, or such company may, after the decease of the assured, deduct from the amount payable by such policy the difference of premium, if any, which would so have been payable from year to year, by reason of any difference of age at the time of issuance of such policy, and no other defense shall be permitted, notwithstanding any warranty as to age, except when it be shown by the company issuing the policy that the policy was procured by fraud' in fact.   It will be presumed, in the absence of all evidence 'to the contrary, that the laws of Minnesota are the same as this statute of our own state. *Davis v. Railroad Co.*, 83 Iowa, 744 (49 N. W. Rep. 77), and cases cited; *German Bank v. American Fire Ins. Co.*, 83 Iowa, 491 (50 N. W. Rep. 53); *Crafts v. Clark*, 38 Iowa, 237; *Sayre v. Wheeler*, 32 Iowa, 559; *Neese v. Insurance Co.*, 55 Iowa, 604 (8 N. W. Rep. 450); *Bean v. Briggs*, 4 Iowa, 465. From the evidence we find that the only misrepresentations as to age was one year,— that is, the deceased was thirty-nine, instead of thirty-eight, when his policy of insurance was issued; and, turning to the by-laws, we find that the assessments and dues are the same, whether the age is thirty-eight or thirty-nine.   So that there is no penalty, under the laws of this state, for the misrepresentation as to age; and the misrepresentation, even if established, will not avoid the policy.

II.   At the time the policy was issued the by-laws provided for an assessment upon each of the members of the association to meet death losses, payable within thirty days from the day of notice.   They also provided that, within fifteen days after an assessment became due, the member may pay the same at the home office, by paying in addition thereto the sum of twenty-five cents.   After the assured became a member of the company this last provision of the by-laws was changed, and a by-law was

adopted providing for reinstatement within fifteen days, by paying the extra twenty-five cents, if the assured was then in good health. On May 1, 1892, the defendant made an assessment to pay six death losses. Due notice of this was given the assured, and he was notified to pay the sum on or before June 1, 1892. The assured did not respond to this notice, and the company then gave him another, the exact terms of which are in dispute, but which notified him that he must make payment of the May assessment by June 20, 1892, and, as the company claims, required him to fill up and return a health certificate. On the thirteenth day of June, 1892, plaintiff procured a draft for the amount of the assessment, and immediately forwarded it to the defendant. Defendant received the draft on the fifteenth day of June, and immediately returned a health certificate to the assured, requesting him to fill it out and return to them. Sieverts filled out this certificate of health, and returned it to the company. The exact date at which this certificate was signed by the assured is not shown, but it reached the company about June 20, 1892. This certificate represented that assured was free from all ailments since the date of the original certificates, and that he was then of sound constitution and good health. The assured was thereupon reinstated in the defendant company, and thereafter assessments and calls were made upon him, which were promptly paid up to the time of his death.

4       The defendant contends that at the time this health certificate was signed the assured was not in good health, and that he had suffered with bodily ailments since the issuance of the original cer-

tificates, at the time he made the health certificates, and that the certificates are void for that reason. On the other hand, plaintiff insists that defendant had no right or authority to insist upon a health certificate, as a condition precedent to reinstatement, because neither the by-laws nor his certificate of membership required it when he became a member, and the company could not make this additional requirement by amendment of its by-laws after the assured · became a member, and had acquired vested rights.   Plaintiff also denied any misrepresentations or false statements in the health certificate. The certificate issued to the assured contained this condition, which was expressly made a part of the contract, viz.: "Provided, that a member may, within fifteen days after his assessment becomes due, be reinstated, by the payment of the assessment, with the addition of a fine of twenty-five cents."   By the terms of the contract, the assured had the absolute right of reinstatement at any time within fifteen days, by paying the assessment, with twenty-five cents in addition. Defendant could not thereafter adopt a by-law requiring a health certificate in addition, which would be retroactive in its operation, unless such right was expressly reserved in the contract.   *Hobbs v. Association*, 82 Iowa, 107 (47 N. W. Rep. 983); *Courtney v. Association*, 53 N. W. Rep. 238. *

Defendant insists, however, that it reserved this right in the following condition printed on the back of the certificate:  "The member herein agrees to conform to all the lawful regulations and by-laws made for the government of this association."   We do not think this constitutes an agreement to be bound by any change which might be made in his contractual rights after the issuance of the certificate.   It has frequently been held that a corporation has no authority, as the legislature from which

---

*This decision is not to be officially reported.   It was suspended by the granting of a rehearing, and, pending rehearing, the appeal was dismissed by appellant.—REPORTER.

it derives its existence has no competency, by laws of its own enactment, to disturb or destroy rights which it has created, or to impair the obligation of contracts, or change the responsibility to its members, or to draw them into new and distinct relations. See *Supreme Commandery v. Ainsworth*, 71 Ala. 436; *Morrison v. Insurance Co.*, 59 Wis. 162 (18 N. W. Rep. 13); *Society v. McVey*, 92 Pa. St. 510; *Stewart v. Association*, 1 South. Rep. (Miss.) 743; *Pulford v. Fire Department*, 31 Mich. 458. We are of opinion, however, that, if this amended by-law was binding upon the assured, the defendant has failed to show such misstatement in the health certificate as avoids the reinstatement. It is a general rule, in construing policies of life insurance, that, before any ailment can be said to be a disease, it must be such as to indicate a vice in the constitution, or be so serious as to have some bearing upon the general health and continuance of life, or such as, according to common understanding, would be called a "disease." *Cushman v. Insurance Co.*, 70 N. Y. 73, and authorities cited. It would be most unreasonable to construe the term "sound health," as used in life insurance, to mean that the assured is absolutely free from all bodily infirmities, or tendencies to disease. If this were its true meaning, few persons of middle age could truthfully say they were in sound health. See May, Ins., section 295; Bac. Ben. Soc., section 232. It is shown in this case that, a short time before the time the health certificate was issued, deceased had a cold, and complained some of his chest, but continued at his work until the latter part of June, 1892. A physician was not called until June 26, 1892. Not until July 10th was the physician able to discover anything serious with his stomach. The presence of the disease which finally took his life was not detected by the physician until some time in July, and even

then it had not progressed far enough to give undoubted evidence that the trouble was cancer of the stomach. Indeed, the exact nature of the disease was not discovered until just before his death. We think defendant has failed to show such misstatements in the health certificate as will avoid the reinstatement of the assured in the company, even if it be held that the amended by-law was binding upon plaintiff and the assured. See Bac. Ben. Soc., section 234. From what we have said, it is apparent that our views coincide with those of the learned district judge, and the decree is *affirmed*.