RUTH VALENTINE et al., Appellants, v. JAMES READ et al., Appellees.

No. 41834.

OCTOBER 24, 1933.

Sidney Benson and B. H. Bowler, and Robertson & Wolfe, for appellants.

Paul E. Roadifer and Addison G. Kistle, for appellees.

KINDIG, J.—In this suit the plaintiffs-appellants, Ruth Valentine and Richard Valentine, wife and husband, seek to cancel and set aside a certain written instrument conveying real estate in Harrison county, Iowa, to the defendants-appellees, James Read and Mattie Frazier. The basis for the relief prayed is fraud. Such fraud, the appellants contend, was perpetrated upon them by the appellees' attorney, Mr. Paul Roadifer, of Council Bluffs, Iowa. Because of that fraud, the appellants declare they executed the conveyance aforesaid. Without the fraud, the appellants insist they would not have executed the conveyance.

It is necessary to consider some material events in order to fully understand the issues involved. James W. Read, the grand-

father of the appellant, Ruth Valentine, died testate on November 7, 1892. By his will, James W. Read made certain contingent and conditional gifts to three beneficiaries. These beneficiaries were his widow, a daughter May Hill, and Rollin H. Read, a son. Rollin H. Read, the son, later died, leaving, as his heirs, James Read, Jr., and Mattie Frazier, the appellees.

May Hill, a beneficiary named in the will of James W. Read, died testate on December 4, 1930. She died unmarried and without issue. The nearest blood relatives of May Hill, therefore, were the appellees. Under the provisions of the will, May Hill gave Ettie Kilts and Frank Kilts certain property. See Kilts v. Read, 216 Iowa 356, 249 N. W. 157. Furthermore, May Hill gave certain property to Mable Hill. When giving some of the property now in dispute to Mable Hill, the testator, May Hill, in her will made this condition: "But in case she (Mable Hill) leaves no children then in that event said property shall go and become the property absolutely of the children of Eva Middleton." Likewise, when giving the other property involved in this suit to Frank Kilts, the testator, in her will, made the following condition: "But in case he (Frank Kilts) leaves no children then in that event said property shall go and become the property absolutely of the children of Eva Middleton."

Ruth Valentine, the appellant, and her brother, Arthur Middleton, are the children of Eva Middleton. Mable Hill and Frank Kilts are still living. Consequently, the interests of the appellants in the property aforesaid are contingent upon the death of Mable Hill and Frank Kilts without issue. Both Mable Hill and Frank Kilts are unmarried. Frank Kilts is thirty, and Mable Hill is forty-one, years of age.

There appears to be a dispute in the record concerning the state of Mable Hill's health. Nevertheless, uncertainty exists when, and if ever, the appellants will come into possession of the real estate in question.

On or about February 28, 1931, James Read and Mattie Frazier purchased the interest of Frank Kilts and Mable Hill in and to the foregoing property. See Kilts v. Read (216 Iowa 356, 249 N. W. 157), supra. After the settlement with Frank Kilts and Mable Hill, and perhaps because thereof, Mr. Paul E. Roadifer, an attorney at law, acting for the appellees, sought to make a similar settlement with the appellants, Ruth Valentine and Richard Valentine, her husband. Consequently Mr. Roadifer talked with Angie Middleton, an

aunt of the appellant Ruth Valentine. Angie Middleton, a well-educated woman, is a teacher in the Council Bluffs schools, but she resides in Omaha, Nebraska. Formerly Angie Middleton lived at Logan, Iowa, where the property in question is situated. Mr. Road-ifer explained to Angie Middleton the provisions of the James W. Read and May Hill wills. He gave a copy of the May Hill will to Angie Middleton and asked that she send it to the appellants, who live in Chicago, Illinois. Accordingly Angie Middleton wrote the appellants a letter and sent them a copy of the May Hill will. At about the same time, Mr. Roadifer wrote a full and complete letter to Almor Middleton, who lives in Chicago. Almor Middleton, a man fifty-four years of age, is an uncle of the appellant Ruth Valentine. His position in Chicago is that of assistant general auditor of the Rock Island Railroad. Ruth Valentine, the appellant, is a graduate of the Chicago high schools and was educated in the Bush Conservatory of Music. Her husband, the appellant Richard Valentine, is a dentist in Chicago. The uncle, Almor Middleton, formerly lived in Logan and Missouri Valley, Iowa. Because, then, the uncle and aunt as before explained, had lived in Logan, they both knew something of the property in question.

After writing to Almor Middleton, Paul Roadifer, as attorney for the appellees, went to Chicago and by appointment met the appellants at Almor Middleton's office, in the Rock Island station. Upon that occasion, Mr. Roadifer procured from the appellants, on March 18, 1931, the instrument of conveyance now under consideration. Claiming that they were defrauded by Mr. Roadifer when they executed the instrument, the appellants, on August 21, 1931, commenced this action in equity to set aside the conveyance. The district court denied the relief, and the appellants appealed.

When in Chicago, before obtaining the contract of conveyance, Mr. Roadifer conferred with the appellants and the uncle, Almor Middleton, concerning the May Hill will, the contest pending thereon, and the property at Logan. Mr. Roadifer called the attention of the appellants to the uncertainty of their interests in the Logan property ever vesting because of the contingencies in the will; that is to say, according to the will, as before explained, it was necessary, before the property would vest in the appellants, for Mable Hill and Frank Kilts to die without issue. Mable Hill and Frank Kilts, as before explained, were aged forty-one and thirty, respectively. Thereupon, Mr. Roadifer, in behalf of the appellees, offered

the appellants $250 for their interests in the property, which offer they finally accepted. At the time, Mr. Roadifer told the appellants that the property in question, if the appellants would obtain title thereto, was worth approximately $20,000.

But it is claimed by the appellants that Mr. Roadifer, at the conference, misrepresented the facts and circumstances relating to the will and the property. These misrepresentations, according to the appellants, consisted of the following: First, that the May Hill will could not be probated; second, that May Hill was not mentally competent when she made the will; third, that the May Hill will was not duly executed; fourth, that the appellees were entitled to the property of their grandfather, James W. Read; and fifth, that, if the will were admitted to probate, the appellees would obtain all the property through claims which they intended to file against the estate. Those representations, the appellants contend, were false and untrue.

According to the appellant Ruth Valentine, Mr. Roadifer stated that Mabel Hill was about thirty-eight years old, when, as a matter of fact, she is forty or forty-one. Likewise, the appellant Ruth Valentine claims that Mr. Roadifer misstated the age of Frank Kilts in a similar way. As a matter of fact, there is but a slight immaterial variation between the ages given by Mr. Roadifer and the exact ages of Mable Hill and Frank Kilts. The appellants knew that, if Frank Kilts married and begot children, the appellants would have no interest in the property left to him. Also the appellants knew that, if Mabel Hill married and begot children, the appellants would have no interest in the property left to her.

It is claimed too that Mr. Roadifer states that the May Hill will would be set aside. On cross-examination, it appears that Mr. Roadifer states that the will would *perhaps* be set aside. There is nothing to indicate that Mr. Roadifer was not in good faith in making this statement. He had started the contest in the courts and was apparently faithful in carrying it on for his clients. When Richard Valentine was testifying, he also said that Mr. Roadifer's words indicated that the May Hill will probably would not be probated. So far as appears, however, there is nothing to indicate that Mr. Roadifer did anything except give his opinion as an attorney concerning the outcome of the proposed will contest. Moreover, it appears undisputed in the record that the appellees do have claims against the estate of May Hill. There is a large claim for taxes, and there

is still a larger claim because of some alleged interest under the James W. Read will. These claims were being asserted in good faith, so far as the record shows.

It is true that Mr. Roadifer valued the Logan property at $20,000, while on the witness stand a witness suggested that it was worth $23,000. For all practical purposes the difference in valuations is not very material While in an instance or two the appellants say that Mr. Roadifer made statements without qualifications, when these claims are compared with the entire record, it becomes evident that Mr. Roadifer at all times was merely giving his opinion. The aunt, Angie Middleton, when writing to the appellants, advised them to accept the offer made by Mr. Roadifer. But a more significant fact is that the appellant Ruth Valentine testified as to what induced the appellants to make the settlement. Concerning this, she said: "We (the appellants) followed the advice of my uncle (Almor Middleton)." Mr. Almor Middleton, it is to be remembered, at one time lived in Logan and knew, at least in a general way, the property and its value. Likewise, he had before him the will of May Hill and knew of the contingencies and conditions involved. He is a business man and had some knowledge, at least, of the property. His advice to the appellants was to accept the proposition, and there is nothing in the record, when everything is considered, to indicate that the uncle gave his niece poor advice. Even at this time he apparently does not claim that the appellants have been defrauded. When commencing the present proceedings, they did not consult with their uncle.

After procuring the conveyance from the appellants, Mr. Paul Roadifer then went to Minneapolis to confer with Arthur Middleton, a brother of the appellant Ruth Valentine. When conferring with Mr. Arthur Middleton, in Minneapolis, Mr. Roadifer stated to him the facts relating to the May Hill and James W. Read wills. Arthur Middleton called into conference a lawyer named Sidney Benson. Mr. Benson advised Arthur Middleton not to settle on the basis suggested. Immediately after this, Arthur Middleton wrote his sister, Ruth Valentine, in Chicago, asking her to repudiate the contract. Following this letter, Mr. Benson, the Minneapolis attorney, also wrote to the appellant Ruth Valentine and solicited the case. In proposing the proposition to the appellant Ruth Valentine, Mr. Benson said in part: "This arrangement subjects you to no expense whatever, and I feel quite sure you will have everything to gain and

nothing to lose by this arrangement." Whether or not this amounts to champerty, we do not now decide.

Nevertheless, Mr. Benson associated himself with Mr. Bowler, also an attorney at Minneapolis, and the present suit, together with the case of Kilts v. Read (216 Iowa 356, 249 N. W. 157), supra, were commenced. At the trial in the case at bar Mr. Benson was a witness, and while such witness he testified concerning certain statements Mr. Roadifer made to him and Arthur Middleton in Minneapolis. So far as material, Mr. Roadifer denies these statements. It is not apparent what materiality, if any, these statements have in the present controversy. The appellants were not present and did not hear them. Mr. Benson did not hear any statement made by Mr. Roadifer to the appellants. Perhaps the alleged materiality is based upon the thought that Mr. Roadifer told Mr. Benson the statements he made to the appellants. If Mr. Roadifer made fraudulent statements to the appellants, it would be quite unlikely that he would tell Mr. Benson about them. Assuming that the appellants' theory at this point is that Mr. Roadifer's attempt to induce Arthur Middleton, by alleged false representations, to make a contract of conveyance to the appellees, would indicate that when inducing the appellants to make the aforesaid conveyance Roadifer made his representations to them with like intent to defraud, nevertheless the effect of such inference, if any, does not materially aid the appellants when considered with the entire record. Upon cross-examination, Mr. Benson modified his testimony somewhat and indicated at least in several instances that Mr. Roadifer was simply giving his opinion as an attorney. Of course, after making the settlements, the will of May Hill was not contested. Consequently it is not known what would have developed had the contest continued.

When we consider the interest of Mr. Benson in the case (he was prosecuting the case on a fifty-fifty basis), and the fact that Ruth Valentine and her husband relied, according to her testimony, upon her uncle's advice, together with the testimony of Mr. Roadifer himself, it is very apparent that the appellants have not laid the basis upon which the conveyance may be set aside. Kilts v. Read (216 Iowa 356, 249 N. W. 157), supra. Before the appellants can set aside the conveyance of real estate because of fraud, it is necessary for them to sustain their claim of fraud by proof that is clear, satisfactory and convincing. Stonewall v. Danielson, 204 Iowa 1367, 217 N. W. 456, and cases therein cited; Kilts v. Read (216

Iowa 356, 249 N. W. 157), supra, and cases therein cited. In the Kilts case, we said:

"The testimony of the plaintiff as to the fraud and misrepresentations alleged is controverted in the record by equally credible testimony. We quote from the case of Johnson v. Tyler, 175 Iowa 723, 733, 157 N. W. 184, 187: 'It is also well settled that courts will not grant relief on the ground of fraud unless the fraud alleged and relied upon, and which if proven would justify the court in doing so, is established by clear, convincing, and satisfactory evidence.' See, also, Epps v. Dickerson, 35 Iowa 301; Ley v. Metropolitan Life Ins. Co., 120 Iowa 203, 94 N. W. 568. A mere preponderance of the evidence is not sufficient. Edmunds v. Ninemires, 200 Iowa 805, 204 N. W. 219; Clark v. Beck, 208 Iowa 156, 225 N. W. 353. Fraud is not presumed. And in this class of cases, especially where title to real estate is involved, it must be established by clear, convincing, and satisfactory evidence. Schrimper v. C., M. & St. P. R. R. Co., 115 Iowa 35, 82 N. W. 916, 87 N. W. 731; Harvey v. Phillips, 193 Iowa 231, 186 N. W. 910; Edmunds v. Ninemires, supra; Epps v. Dickerson, supra; Johnson v. Tyler, supra. * * * Some claim is made by appellants that there was no consideration for the contracts here involved. We think there is no merit in such claim."

During his negotiations with Mr. Benson, Mr. Roadifer stated that, if Benson's other client were paid more than that received by the appellants, he (Roadifer) would insist that the appellants receive a like amount. This was after Roadifer had settled with the appellants. That attitude, together with the other facts and circumstances in the case, indicates fairness and a desire to treat the appellants fairly under all circumstances. It is apparent, therefore, that the appellants have not sustained their claim of fraud.

Wherefore the judgment and decree of the district court must be, and hereby is, affirmed.—Affirmed.

All Justices concur, except KINTZINGER, who took no part.