SERVICE LIFE INSURANCE COMPANY OF OMAHA, Appellant, v. CASSANDRA JANE McCULLOUGH, Appellee.

No. 46400.

818

March 7, 1944.

Rehearing·Denied May 6, 1944.

George C. Stuart, of Chariton, and Lloyd Dort, of Lincoln, Nebraska, for appellant.

W. W. Bulman, Leo A. Hoegh, and Virgil E. Meyer, all of Chariton, for appellee.

Bliss, J.—The facts and their chronology are important in the determination of the appeal. On July 1, 1937, Herman F. McCullough, a farmer, born October 2, 1889, made written application to plaintiff for a contract of insurance. At the same time, on a separate form, he made a declaration of insurability in lieu of a medical examination. The defendant testified that the insured had a medical examination, which was the privilege of plaintiff, but no report thereof was attached to the contract. There is no denial of defendant's testimony on this point. The policy or contract was issued on July 19, 1937. It was a convertible ten-year term policy, providing for the payment of

$2,000 and all premiums paid, to the wife of insured, the defendant, on proper proof of the death of insured prior to July 17, 1947. The premium was payable quarterly in the sum of $9.48 on the 19th of July, October, January, and April. The insured failed to make the payment due July 19, 1939, within the grace period. On August 30, 1939, the plaintiff, by a form letter, notified insured of the suspension of the policy, and stated therein:

"Complete the reinstatement form on the back of this letter and send it to us with the amount of your past due premium."

On December 4, 1939, the insured filled out the blanks on the printed form sent to him, and signed it before a witness, and sent it to the company, with the two payments in default. The material portions of this "application for reinstatement of policy," and all of the questions and answers—the latter being in the handwriting of insured and the other parts being printed—are as follows:

"1. What is your present occupation? Laborer. Exact Height and Weight. 5 ft. 11 in. 170 lbs.
2. Have you had any serious illness since your policy was issued? No.
 If so, explain. A sprained ankle.
3. What relatives have died since policy was issued? None.
 Cause of death. . . . . . . . . . .
4. Are the members of your household in good health? Yes.
5. Have you been refused a policy by any other insurance company or society since policy was issued? No.
6. Are you in good health and free from disease? Yes.

"I DECLARE on behalf of myself and of every person who has or shall claim any interest in or under the above numbered policy that I made each and all of the foregoing answers; that I have carefully read them over and find that they are correct. Said answers each and all are, and I warrant them to be, full, complete and true. I have made said answers for the purpose of inducing the said Company to reinstate my said policy and I understand that each is material to the risk and that said Com-

pany will, and I agree that it shall, rely and act solely upon my said answers in passing upon my application for the reinstatement of said policy which lapsed for nonpayment of premium due on the 19 day of August, 1939.''

The answers to questions 2 and 6 are the only ones complained about by plaintiff. These answers the plaintiff pleaded and urged were made warranties by the last paragraph of the application.

The policy was reinstated on December 16, 1939, and a photostat of the application for reinstatement was sent to insured by the company with instructions to attach it to the policy. The premiums were thereafter paid until the death of the insured.

The insured and his wife moved from the farm on which he was working into the village of Derby, Iowa (population about three hundred), in the spring of 1938. There he conducted a little shop for the repair of windmills, pumps, machinery, etc. This work did not occupy all of his time, and he was engaged in WPA work, and in 1940 and 1941 he was employed in a service station. On October 12, 1939, while doing some excavating in connection with WPA bridge work, he sprained one of his ankles. The progress was slow in the improvement of the ankle, and on March 19, 1940, he was sent; at the expense of the Federal Government, to the United States Marine Hospital at St. Louis, Missouri, for further treatment of the ankle. The results were favorable and on April 4, 1940, he was discharged from the hospital and returned home. By about the first of May following his ankle was so that he was again at work. There is no warrant for the intimation of the plaintiff that he received any treatment or examination other than for his ankle, although the defendant testified that sometime after his return he told her that a doctor at the hospital said he might have colitis.

In August 1937, while working on the farm, he had quite a severe attack of diarrhea, which lasted three or four days, although he kept on with his work. He attributed it to the eating of tomatoes or cucumbers. He went to Dr. Niblock at Derby to get medicine for the ailment. The doctor testified that it was just ordinary diarrhea and lasted something like a day or two. He also testified that it was the first time he had treated

McCullough for diarrhea, although he had been his family doctor for thirty years. In February 1940, the insured had a light attack of flu, accompanied by loose bowels. No doctor treated him at that time. About Christmas, 1940, he had a severer attack of flu, accompanied by rather severe diarrhea— eight or ten stools in twenty-four hours. Dr. Niblock attended him. He testified that then for the first time he suspected that McCullough might have colitis. But he said nothing to Mc-Cullough or the defendant about his suspicions. The defendant testified that after the diarrhea in August 1937, her husband had no diarrhea of any kind until the two flu attacks in 1940. In May 1941 he installed a pumphead on a windmill tower. Then, for the first time, was any trace of blood noted in his stools. At the service station he did heavy work handling tires and servicing motor vehicles. Oftentimes he would come to the station voluntarily, after supper, and work. The last work he did at the service station was on November 1, 1941. He went home at that time and became severely ill. During the latter days of his illness his stools, containing blood and mucus, were as often as twenty-eight times in a day. Dr. Niblock attended him. On November 17, 1941, he was taken in an ambulance to the University Hospital at Iowa City. He was in a stupor most of the way and in that condition when he reached the hospital at 4 o'clock p. m. A doctor examined him and took a history of the case from his wife. The patient died at 9 :25 p. m. on November 18, 1941. The report of the post mortem showed a cirrhotic liver, idiopathic ulcerative colitis, and lobular pneumonia. The cause of death was given as toxemia due to the two first-named conditions. The depositions of three doctors from the University Hospital were read by the plaintiff. These doctors were licensed to practice, respectively, in 1940, 1939, and 1938. The first doctor attended the patient while he was living. The second performed the autopsy. The third, who had no personal observation of the patient or the body, answered a hypothetical question. The history as taken by the first doctor was a summation in the words of the doctor of what he said the defendant told him. It was written from memory, at some time, as no notes were taken of what the defendant told him. Some errors may have inadvertently crept in because of this, as it is contra-

dicted by other believable testimony. The doctor who performed the autopsy testified that there were a number of ulcers in the large colon. He described the ulcers as idiopathic, meaning that their origination and development were not clear, and were without recognizable cause, as of spontaneous origin. He said as a witness, "I don't undertake to say how long those ulcers had been there." Dr. Yocum, of Chariton, testifying for plaintiff, said, "There is no way of knowing how long a time it would take to produce ulcers." The testimony discloses that diarrhea may not be colitis, and it may have a number of causes. Also, there may be diarrhea and colitis without ulcers.

The hypothetical question propounded to the third of the hospital doctors was unfair to the defendant, and because of misstatements of fact therein, the answer that the ulcerative colitis was probably of five years' duration is of little weight.

In addition to this testimony the plaintiff introduced in evidence defendant's proof of loss, containing her sworn statement and the sworn statement of Dr. Niblock, and the statement of Dr. Ide, of Iowa City, that death was caused by toxemia due to ulcerative colitis and portal cirrhosis of the liver. In the two first-mentioned statements the cause of death was given as colitis suffered for about three years. The history of the patient, compiled at the hospital from purported information given by the defendant, stated that the insured had had intermittent diarrhea for five years. There was also testimony by the defendant that in 1941 there was some edema of the lower limbs, and some blotches caused by bursting capillaries due to poor circulation. The edema was slight and the blotches passed away.

Opposed to the testimony of the plaintiff, in addition to that already noted, is the testimony of the defendant that her husband had had no diarrhea for almost three years after that of August 1937; the testimony of eight lay witnesses who had worked and associated with and seen much of the insured during the years preceding his death, and never observed anything about him to indicate any diarrhea, colitis, or physical ailment other than the sprained ankle. The application for the insurance shows he then weighed 163 pounds; his application for reinstatement shows he then weighed 170 pounds. The deposition

of Dr. Couch at the hospital states that "He was a well developed and fairly well nourished man * * *." This was after his severe illness for two weeks. His pictures support this testimony. He was a hearty eater. He did hard work. His book of accounts, in his handwriting, shows that he was steadily at work.

Plaintiff's petition alleged breach of warranty with respect to answers 2 and 6 in the reinstatement application. It also alleged that these statements or representations were false and were knowingly and fraudulently made with intent to deceive the plaintiff, and that because of its reliance upon them the policy was reinstated. Defendant in her answer denied these allegations and prayed recovery on the policy.

The able trial court, in the opinion filed, fairly reviewed the evidence and the contentions of the plaintiff and reached correct conclusions of law and fact.

I. Appellant challenges the court's finding that the statements complained of in the application for reinstatement were mere representations and not warranties. The second question which the appellant framed and propounded to the insured in the printed application sent to him, was: "2. Have you had any serious illness since your policy was issued? If so, explain." The insured answered "No" to the question, and for an explanation, said: "A sprained ankle." The appellant makes no complaint about the explanation.

The sixth question in the application was: "Are you in good health and free from disease?" The answer was "Yes."

It is the contention of appellant that these respective answers, by the concluding paragraph of the application, were made warranties, on which the appellant could conclusively and solely rely as the basis for the reinstatement of the policy, and since they were untrue, it is wholly immaterial and no defense that the insured had no knowledge of their falsity and made the answers in good faith, honestly believing them to be true.

Conceding but not passing upon this statement of the law where the fact of the warranty is established, since such a decision is not necessary in this case, it is, nevertheless, our conclusion that the answers complained of were not warranties, but were representations only, and that the good faith of the insured in making his answers is material, and that the appellant

824

is entitled to a reversal only if it has established its allegations of fraud.

Certain rules of law, well recognized and followed by this court and by courts generally, sustain our conclusion. This application for reinstatement was prepared by the appellant, and it framed the questions as it saw fit. Its policy provided that it "may be reinstated * * * at any time after default in the payment of any renewal premium, provided the Assured applies therefor and furnishes evidence of insurability satisfactory to the Company, and pays in cash all past due premiums with interest thereon at the rate of six per cent per annum from date when due * * *." It might have used other methods of satisfying itself of insurability but it selected this particular method. In Parker v. Iowa Mut. Tornado Ins. Assn., 220 Iowa 262, 264, 260 N. W. 844, 846, this court said:

"In the consideration of this case, it must be remembered that the general rule of construction in relation to insurance contracts is that they are to be most strongly construed against the insurer and in favor of the insured, especially where forfeiture is involved, so that indemnity will be granted rather than denied." (Citing many cases in support.)

The court will deal strictly with the insurer, who drafted the proviso, and will resolve all doubt in favor of payment. Kascoutas v. Federal Life Ins. Co., 189 Iowa 889, 892, 179 N. W. 133; Brush v. Washington Nat. Ins. Co., 230 Iowa 872, 876, 299 N. W. 403. Any ambiguity in the insurance contract must be construed in favor of the assured or the beneficiary. Breen v. Great Western Acc. Ins. Co., 190 Iowa 1172, 179 N. W. 931; Crowe v. Merchants Life & Cas. Co., 202 Iowa 43, 45, 209 N. W. 406; New York L. Ins. Co. v. Rotman, 231 Iowa 1249, 3 N. W. 2d 603; Shain v. Mutual Benefit, Health & Acc. Assn., 232 Iowa 1143, 7 N. W. 2d 806, 807.

The insured was asked if he had had "any serious illness." These words are not specific or definite. They are all general and indeterminate. Different persons would differ as to what was a serious illness. Lord Bacon said:

"All words, whether they be in deeds or statutes, or otherwise, if they be general, and not express and precise, shall be

restrained unto the fitness of the matter and the person."
Bacon's Law Max. Reg. 10, Cal. Lex. Jur.

The insured was not asked whether he had diarrhea occasionally or frequently. But the insurer left to his judgment to say whether he had had an illness which he considered serious. Each knew that the subject of inquiry was his insurability. That being so, the insured thought only of some illness which might have impaired his health and lessened his insurability. Certainly the question would not reasonably recall the diarrhea of August 1937, or such an indisposition at a later time.

"Where an insurance company or association seeks to avoid a policy or certificate of membership on the ground of falsity in answer to a question which is by the terms of the contract made material, the court will construe the question and answer strictly as against the company, and liberally with reference to the insured. Stewart v. Association, 110 Iowa 529. If any construction can reasonably be put on the question and the answer such as will avoid a forfeiture of the policy on the ground of falsity of the answer, that construction will be given, and the policy will be sustained." Newton v. Southwestern Mut. L. Assn., 116 Iowa 311, 317, 90 N. W. 73, 75.

"The idea is, that such a construction is to be put by the courts upon the language as an ordinary person of common understanding would put upon it when addressed to him for answer." Wilkinson. v. Connecticut Mut. L. Ins. Co., 30 Iowa 119, 127, 6 Am. Rep. 657.

"Because of the ambiguity, the information called for was uncertain, and whether the answer was false depends on the deceased's understanding of what was required. * * * The material inquiry was whether the assured truthfully responded to the inquiry as he understood it." Stewart v. Equitable Mut. L. Assn., 110 Iowa 528, 531, 532, 81 N. W. 782, 783.

"The question is not, what did the company intend? but, rather, what had the policy-holder a right to think was meant?" Matthes v. Imperial Acc. Assn., 110 Iowa 222, 228, 81 N. W. 484, 486.

See, also, Washburn-Halligan Coffee Co. v. Merchants Brick

Mut. F. Ins. Co., 110 Iowa 423, 432, 81 N. W. 707, 80 Am. St. Rep. 311; Carter v. Humboldt Fire Ins. Co., 17 Iowa 456, 461.

"Contracts of insurance should not be construed through the magnifying eye of a technical lawyer, but rather from the standpoint of what an ordinary man would believe the contract to mean." Murphy v. New York L. Ins. Co., 219 Iowa 609, 613, 258 N. W. 749, 751.

To the same effect, see New York Life Ins. Co. v. Rotman, supra, 231 Iowa 1249, 1251, 3 N. W. 2d 603; Shain v. Mutual Benefit, Health & Acc. Assn., supra, 232 Iowa 1143, 7 N. W. 2d 806, 809.

 The appellant, when it asked the insured whether he was "in good health and free from disease," certainly knew that any answer he might give would be only his opinion, conclusion, or best judgment in the matter. It knew, of course, that he could not warrant or conclusively certify that he was in good health and free from disease. It knew that an affirmative answer would not be a warranty, but would be nothing more than a representation that, insofar as he reasonably and in good faith knew, the answer was true. It knew that it could put no greater reliance in such an answer. It could have had an examination by a doctor if it desired. But, not having required one, and having asked a question calling for an answer which could not be a warranty, it cannot, after the death of the insured, defeat recovery on the policy by the findings of an autopsy. We said, in Sieverts v. National Ben. Assn., 95 Iowa 710, 716, 64 N. W. 671, 673:

"It would be most unreasonable to construe the term 'sound health,' as used in life insurance, to mean that the assured is absolutely free from all bodily infirmities, or tendencies to disease. If this were its true meaning, few persons of middle age could truthfully say they were in sound health."

 The fact that the last paragraph of the reinstatement application specifically states that the answers therein are warranties does not make them such. Courts should not and do not sacrifice the substance and spirit to the letter and the form in construing warranties and representations and in seeking to ascertain the intention of the parties to insurance contracts.

Many years ago, in Miller v. Mutual Benefit L. Ins. Co., 31 Iowa 216, 226, 228, 7 Am. Rep. 122, this court said:

"It is quite time that the technical constructions which have pertained with reference to contracts of this kind, blocking the pathway to justice, and leading to decisions opposed to the general sense of mankind, should be abandoned * * *."

In that case, the court, quoting from Campbell v. New England Mut. L. Ins. Co., 98 Mass. 381, 391, said:

" 'If they [engagements of the insured] appear on the face of the policy, they do not necessarily become warranties. Their character will depend upon the form of expression used, the apparent purpose of the insertion, and sometimes upon the connection, or relation to other parts of the instrument. * * * In considering the question whether a statement forming a part of the contract is a warranty, it must be borne in mind, as an established maxim, that warranties are not to be created nor extended by construction. They must arise, if at all, from the fair interpretation and clear intendment of the words used by the parties.' "

Continuing, the opinion states:

"In the case of Daniels v. Hudson River Fire Ins. Co. [12 Cush. 416, 424, (Mass.), 59 Am. Dec. 192], Shaw, Ch. J., having alluded to the fact that a warranty, however immaterial, if untrue, avoids the policy, uses this language: 'Hence it is, we suppose, that the leaning of all courts is, to hold such a stipulation to be a representation, rather than a warranty, in all cases, where there is any room for construction; because such construction will, in general, best carry into effect the real intent and purpose which the parties have in view, in making their contract.' "

In Peterson v. Des Moines Life Assn., 115 Iowa 668, 672, 87 N. W. 397, 399, the court said:

"Indeed, the tendency of the courts, without the aid of legislation, has been to construe statements as to previous accidents and diseases into mere assertions on the part of the applicant as to what he knows of his personal knowledge, or may

be presumed in good faith to know, instead of strict warranties regardless of personal knowledge. Wilkinson v. Insurance Co., 30 Iowa, 119. It is well settled that such warranties are to be construed with reference to the general object of the inquiry.''

This court has never departed from the stand taken in these early cases. In Murray - v. Brotherhood of American Yeomen, 180 Iowa 626, 628, 629, 647, 163 N. W. 421, 422, the insured in her application stated that she never had any disease of the throat, heart, or lungs. She died of consumption not long after. The application stated: ''I hereby warrant all my answers herein to be full, complete and true.'' The certificate recited that it was ''issued and accepted upon the following warranties and conditions and agreements * * * which * * * are true in every particular, and shall be held to be strict warranties.'' After citing our own decisions and those of other states, the court said:

''Enough has been said to indicate that in this case the statements of deceased as to her physical condition, and particularly as to tubercular disease, were necessarily a matter of opinion.''

Under similar statements in the application and the policy, in Teeple v. Fraternal Bankers Reserve Soc., 179 Iowa 65, 71–73, 161 N. W. 102, 105, L. R. A. 1917C, 858, the court, after stating the rule as to warranties and representations, and the tendency of the courts to favor the latter, if it be fairly possible to do so, to avoid a forfeiture, said:

''It is now well settled that the use of the word 'warrant' or 'warranty' in the application or policy is of itself by no means conclusive upon the question whether, in view of the entire record, any given answer or statement of the insured is to be given technical effect as a warranty, rather than as a representation. * * * If the answer alleged to be a warranty is one which, from the very nature of the subject of inquiry, must necessarily be an expression of an opinion, the warranty will not be held to extend further than to the good faith of the answer.''

The opinion quotes at length from an able opinion written

by Justice Harlan, in Moulor v. American Life Ins. Co., 111 U. S. 335, 4 S. Ct. 466, 28 L. Ed. 447.

In Murphy v. National Travelers Ben. Assn., 179 Iowa 213, 218, 219, 161 N. W. 57, 59, L. R. A. 1917C, 338, in holding the statements not to be warranties, and that "it requires clear and unequivocal language to create a warranty," we said:

"In other words, the courts will lean against that construction of the contract which will impose upon the assured the burden of a warranty, and will neither create nor extend a warranty by construction. That, even though a warranty in name or form be created by the terms of the contract, its effect may be modified by other parts of the policy, or of the application, including the questions and answers."

In Lakka v. Modern Brotherhood of America, 163 Iowa 159, 169, 143 N. W. 513, 517, 49 L. R. A., N. S., 902, speaking through Justice Evans, we said:

"The contention is that he warranted himself in sound health and that such warranty would be breached by the existence of infirmities, regardless of the knowledge or good faith of the insured. To so hold would be to require the insured to insure himself and to guarantee his own natural expectancy of life and to forfeit his insurance after death if death came too soon. If such a provision were enforceable regardless of good faith of the insured, and regardless of his knowledge of hidden infirmities, no person would know whether he was insured or not. Such question could be determined to a certainty only by an autopsy. To introduce into life insurance such an element of uncertainty would be contrary to the spirit and purpose of it and contrary therefore to public policy. This is the direction indicated by our previous cases [citing some of them] * * *. See, also, S. R. of the F. M. C. v. Crawford, 32 Tex. Civ. App. 603, 605 (75 S. W. 844), from which we quote as follows: 'It seems to us that the answer of an applicant for life insurance upon his own life, that he has never had any serious illness, should be considered as a mere expression of opinion as to the character of the sickness and should not avoid the policy, even though such answer was untrue, provided, of course, the applicant did not know of its falsity. The form of the question

necessarily calls for an opinion, and an agreement to warrant the truthfulness of the answer is no more than to warrant that the applicant will make a bona fide answer as to his opinion of the character of his ailment.' "

See, also, Getsinger v. Union Mut. L. Ins. Co., 216 Iowa 610, 247 N. W. 260.

Under the decisions of this court and of the courts generally, and the record herein, it is our firm conviction that the so-called warranties of the insured were no more than statements of his honest belief and should be treated as representations. It is our decision, therefore, that the appellant failed to establish a case upon its allegations of breach of warranties.

■ II. Neither do we have any hesitation in holding that it has failed to establish that the answers of the insured were made with the fraudulent intent to deceive the appellant. The essential elements in establishing a suit such as this, in which the burden has been assumed by and is clearly upon the appellant (Wilkins v. Germania Fire Ins. Co., 57 Iowa 529, 531, 10 N. W. 916; Post v. Grand Lodge A. O. U. W., 211 Iowa 786, 790, 232 N. W. 140; Carpenter v. Iowa State Trav. Men's Assn., 213 Iowa 1001, 1004, 240 N. W. 639; Olson v. Southern Surety Co., 201 Iowa 1334, 1338, 208 N. W. 213), have been recently stated and discussed by Justice Oliver in Olson v. New York L. Ins. Co., 229 Iowa 1073, 1077, 295 N. W. 833, and in Equitable L. Ins. Co. v. Mann, 233 Iowa 293, 7 N. W. 2d 566, 567. "To establish such evidentiary fact of bad faith, falsehood, or deception, it is held in a multitude of cases that the proof must be 'clear,' 'satisfactory,' 'convincing.' " Ley v. Metropolitan L. Ins. Co., 120 Iowa 203, 209, 94 N. W. 568, 570. See, also, Bixby v. Carskaddon, 55 Iowa 533, 535, 536, 8 N. W. 354; Severson v. Kock, 159 Iowa 343, 346, 347, 140 N. W. 220; Exchange Nat. Bk. v. McCaffery, 175 Iowa 451, 458, 157 N. W. 209; Edmunds v. Ninemires, 200 Iowa 805, 808, 204 N. W. 219; Friedman v. Weeks, 190 Iowa 1083, 1087, 181 N. W. 390; Harvey v. Phillips, 193 Iowa 231, 233, 234, 186 N. W. 910; Brechwald v. Small, 180 Iowa 22, 28, 161°N. W. 20; Olson v. New York L. Ins. Co., supra; Stewart v. Equitable Mut. L. Ins. Co., supra. In fact, in some equity suits we have held that "a mere preponderance of evidence is not sufficient." Johnson v. Tyler, 175 Iowa 723,

733, 157 N. W. 184, 187; Valentine v. Read, 217 Iowa 57, 63, 250 N. W. 634; Kilts v. Read, 216 Iowa 356, 365, 249 N. W. 157; Goff v. Milliron, 221 Iowa 998, 1003, 266 N. W. 526; Dallas Real Estate Co. v. Groves, 228 Iowa 1232, 1239, 289 N. W. 900, 292 N. W. 152.

The only evidence that could possibly tend to show that the insured had any knowledge that he was seriously affected physically at the time he made application for reinstatement on December 4, 1939, was his diarrhea attack in 1937. It cannot reasonably be said that this temporary indisposition, which all persons have experienced, is a basis for finding his answers to be knowingly false and made with intent to deceive. In Sargent v. Modern Brotherhood of America, 148 Iowa 600, 608, 127 N. W. 52, 55, the court, in speaking of inconsequential ailments, said:

"Thus, it has been held that a statement that the applicant is in good health is not shown to be false by proof of a temporary ailment, not indicating a vice in the constitution or so serious as to have some bearing on the general health and continuance of health; that is, such as according to common understanding, would be called a disease."

See, also, Sieverts v. National Ben. Assn., supra, 95 Iowa 710, 716, 64 N. W. 671; Meyer v. Fidelity & Cas. Co., 96 Iowa 378, 383, 65 N. W. 328, 59 Am. St. Rep. 374; Snyder v. National Trav. Ben. Assn., 180 Iowa 1344, 1347, 164 N. W. 176; Equitable L. Ins. Co., v. Mann, supra, 233 Iowa 293, 7 N. W. 2d 566, 568; Parker v. Union Mut. L. Co., 218 Iowa 145, 149, 254 N. W. 31. In Colver v. Continental Assur. Co., 220 Iowa 407, 409, 411, 262 N. W. 791, 793, in holding that an applicant for insurance was not required to mention every temporary indisposition or disability, not amounting to a disease, we said:

"To hold otherwise would no doubt unjustly deprive many of the right to recover upon insurance policies, who through failure of memory or because of what to them seemed a trivial call upon a doctor failed to disclose some consultation with a doctor for a temporary disability or indisposition, or for some minor ailment."

All other matters which might have put the insured on notice that he had a serious disease occurred after his reinstatement and could have had no bearing upon his knowledge or frame of mind at that time. The appellant failed to establish that the answers complained of were made with a knowledge of their falsity or with any intent to deceive or defraud the appellant.

We have carefully read the able argument of the appellant but have no hesitation in holding that the judgment and decree of the trial court is right. It is, therefore,—Affirmed.

SMITH, C. J., and HALE, OLIVER, MANTZ, MILLER, GARFIELD, and MULRONEY, JJ., concur.