ELIZABETH DEZSI, appellee, v. MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION, a corporation, appellant.

No. 51107.

(Reported in 125 N.W.2d 219)

1028

DECEMBER 10, 1963.

John D. Randall, of Cedar Rapids, for appellant.

Fisher & Pickens, of Cedar Rapids, for appellee.

SNELL, J.—This is an action at law seeking recovery under a hospital insurance policy. On March 10, 1961, Zoltan Dezsi signed an application for insurance with defendant, Mutual Benefit Health & Accident Association, generally called Mutual of Omaha, providing for benefits in the event of hospitalization. The policy was issued covering applicant as the principal in-

sured and also his wife and minor child. Mr. Dezsi was hospitalized June 30, 1961, and incurred medical and surgical expense thereafter. He died in surgery on July 15, 1961, of heart failure, called cardiac arrest. The cause of death was unrelated to the condition for which he was hospitalized or for which the surgery was performed.

Mrs. Dezsi, the beneficiary under the insurance policy, sought payment of the scheduled benefits. Defendant denied liability.

As affirmative defenses defendant alleged that the application signed by decedent contained statements false and known to be false; that decedent was ill from a sickness contracted less than thirty days after the policy date or long prior thereto; that there was no valid policy of insurance upon which plaintiff could recover.

The issues were submitted to a jury. The jury returned a verdict for plaintiff.

I. Complete review herein of all the evidence is unnecessary. Our review is not de novo. This is a law action. We need only determine if there was sufficient evidence to support the verdict. The jury verdict if supported by substantial evidence is binding on us. Defendant pleaded and relied on affirmative defenses. The burden of proof in connection therewith is clearly upon defendant. Ordinarily the burden follows the pleading and one who pleads and relies upon an affirmative issue must carry the burden of proving it. This rule is followed in insurance cases. Service Life Insurance Co. v. McCullough, 234 Iowa 817, 830, 13 N.W.2d 440, 153 A. L. R. 697. Further citation of authority is unnecessary. See rule 344(f), paragraphs 1 and 5, Rules of Civil Procedure.

II. Mr. and Mrs. Dezsi were Hungarian and German immigrants. They came to the United States in 1951 through the Church World Service Refugee Program. Thereafter they were employed as domestics in the home of a Cedar Rapids family. Mr. Dezsi was well educated in his own country. He spoke several languages. He could read and understand English but because of his accent was very hard to understand when he spoke English. In the Cedar Rapids home Mr. Dezsi was the cook.

He enjoyed and ate highly seasoned, greasy food in generous quantities. He teased an Austrian friend with whom he frequently ate who "couldn't eat so good anymore." Mr. Dezsi said "I can eat what I want and so much I want." At times he would overeat. He occasionally suffered some abdominal distress.

 ██ As conditions precedent to entry into the United States Mr. and Mrs. Dezsi passed physical examinations in Germany. Defendant objected to this testimony but in view of defendant's defense of antecedent ailments the testimony did not relate to matters so remote as to make its acceptance reversible error. "The question of whether such evidence is too remote depends upon the causal connection in each particular case, and its acceptance rests largely in the sound discretion of the trial court." Brower v. Quick, 249 Iowa 569, 581, 88 N.W.2d 120.

In June 1952 Mr. and Mrs. Dezsi took out an accident and health insurance policy with Continental Casualty Company. This policy was carried until its expiration date after the effective date of the policy with defendant herein.

Some time prior to March 10, 1961, in response to advertisements of defendant Mrs. Dezsi wrote for information. An agent of defendant called. He extolled the advantages of a Mutual of Omaha policy and obtained an application for insurance. The application blank was filled out by the agent and signed by Mr. Dezsi. It contained negative answers to the following questions:

"Have you or any Dependents ever had, or been told you had, or received advice or treatment for: (circle conditions answered 'yes' and give details below) (a) High blood pressure, heart, vein or artery trouble, rheumatic fever?

"(b) Lung or other respiratory trouble; stomach, gall bladder, intestinal or rectal trouble; rupture; diabetes?

"(c) Any form of tuberculosis; kidney or bladder trouble, prostate trouble, female trouble, venereal disease?

"(d) Mental or nervous trouble, epilepsy, brain disorder; arthritis, rheumatism, back or spinal trouble?

"(e) Cancer, tumor or any form of growth; any de-

formity; loss of hearing; loss of, or loss of use of, eye or limb? Have you or any Dependents ever had, or been told you had, or received advice or treatment for: (a) any physical conditions or injuries not mentioned above, or (b) any symptoms of ill health?"

Dr. Carl Aschoff, a physician in general practice, was the Dezsi family doctor. He knew Mr. Dezsi from 1956 until his death. Mr. Dezsi had the usual run of minor illnesses but in the opinion of the doctor none of major consequence until June 1961.

In June 1961 Mr. Dezsi was having severe abdominal pain. The cause was obscure. To aid in diagnosis the patient was referred to Dr. John Huston, a radiologist. Fluoroscopic and X-ray examinations followed. Generally normal conditions were found except for an irregularity in outline near the apex of the duodenum. No ulcer crater was seen. The radiologist could not be sure but he thought the patient "probably had an ulcer."

The irregularity or scarring noted by the radiologist had nothing to do with where an ulcer was ultimately found.

Mr. Dezsi was hospitalized and extensive examination, including X-ray and laboratory tests, followed. Normal conditions were found. No one knew what was wrong with Mr. Dezsi.

From July 1, 1961, on, at the request of Doctor Aschoff, the patient was also examined and treated by Dr. E. Lindley, a specialist in internal medicine and diagnosis. After a week of study, examination and testing Doctor Lindley could give no positive diagnosis and did not know what was wrong.

About July 8 or 9 symptoms of intestinal bleeding were noted. Multiple transfusions and extensive medication produced no cure. Surgery followed. On July 15 Mr. Dezsi died during surgery as a result of heart failure. The cause of death had nothing to do with the condition for which the surgery was performed. During surgery a duodenal ulcer in the second portion of the duodenum was found.

The doctors could not say how long the condition had existed. It could have existed for some time or have begun but a short time before.

Four doctors, Doctor Aschoff, the family physician,

Doctor Lindley, the internist, Doctor Huston, the radiologist, and Dr. Daniel Youngblade, an intern at the hospital, testified. Their examinations by counsel, particularly in cross-examination by defendant's counsel, were exhaustive. Decedent's medical history, habits, ailments, treatments, the doctors' opinions and conclusions were reviewed. No useful purpose would be served by setting out the testimony in detail. There was no evidence to support defendant's theory. There was no evidence that Zoltan Dezsi had ever been told, knew or even suspected that he had the ailment for which he was hospitalized. The time of origin of his ailment was unknown. There was no evidence from which it could be held as a matter of uncontroverted fact or as a matter of law that decedent was hospitalized for an ailment originating either before or within 30 days after March 10, 1961. Defendant's only witness was an officer from the underwriting department of the company. He testified in substance that if decedent had fully and truthfully disclosed his condition the policy of insurance would not have been issued.

The questions were submitted to the jury. The jury found for plaintiff and against defendant on the affirmative defenses.

We find no ground for interference.

Plaintiff's decedent was insured under a policy issued by defendant. Decedent was hospitalized and expense was incurred. Plaintiff's case was established unless defendant was entitled to prevail under the affirmative defenses. These defenses presented questions of fact. The questions of fact were presented to the jury. The jury answered. The weakness in defendant's position in the trial court and on appeal is the lack of evidence to support its position. Factual positions are hard to sustain without evidence.

 III. Problems comparable to those involved here were considered, determined and authorities cited in Service Life Insurance Co. v. McCullough, supra. We quote therefrom:

" 'In the consideration of this case, it must be remembered that the general rule of construction in relation to insurance contracts is that they are to be most strongly construed against the insurer and in favor of the insured, especially where forfeiture is involved, so that indemnity will be granted rather

than denied.' [Parker v. Iowa Mutual Tornado Ins. Assn., 220 Iowa 262, 264, 260 N.W. 844, 846.]

"The court will deal strictly with the insurer, who drafted the proviso, and will resolve all doubt in favor of payment. [Citations] * * *

"The insured was not asked whether he had diarrhea occasionally or frequently. But the insurer left to his judgment to say whether he had had an illness which he considered serious. Each knew that the subject of inquiry was his insurability. That being so, the insured thought only of some illness which might have impaired his health and lessened his insurability. * * *

" 'Where an insurance company or association seeks to avoid a policy or certificate of membership on the ground of falsity in answer to a question which is by the terms of the contract made material, the court will construe the question and answer strictly as against the company, and liberally with reference to the insured. Stewart v. Association, 110 Iowa 529. If any construction can reasonably be put on the question and the answer such as will avoid a forfeiture of the policy on the ground of falsity of the answer, that construction will be given, and the policy will be sustained.' Newton v. Southwestern Mut. L. Assn., 116 Iowa 311, 317, 90 N.W. 73, 75. * * *

" 'The material inquiry was whether the assured truthfully responded to the inquiry as he understood it.' Stewart v. Equitable Mut. L. Assn., 110 Iowa 528, 531, 532, 81 N.W. 782, 783. * * *

" 'Contracts of insurance should not be construed through the magnifying eye of a technical lawyer, but rather from the standpoint of what an ordinary man would believe the contract to mean.' Murphy v. New York L. Ins. Co., 219 Iowa 609, 613, 258 N.W. 749, 751. * * *

"The appellant, when it asked the insured whether he was 'in good health and free from disease,' certainly knew that any answer he might give would be only his opinion, conclusion, or best judgment in the matter. It knew, of course, that he could not warrant or conclusively certify that he was in good health and free from disease. It knew that an affirmative answer would

not be a warranty, but would be nothing more than a represen-
tation that, insofar as he reasonably and in good faith knew, the
answer was true. It knew that it could put no greater reliance
in such an answer. It could have had an examination by a doc-
tor if it desired. But, not having required one, and having asked
a question calling for an answer which could not be a warranty,
it cannot, after the death of the insured, defeat recovery on the
policy by the findings of an autopsy. We said, in Sieverts v.
National Ben. Assn., 95 Iowa 710, 716, 64 N.W. 671, 673:

"'It would be most unreasonable to construe the term
"sound health," as used in life insurance, to mean that the as-
sured is absolutely free from all bodily infirmities, or tendencies
to disease. If this were its true meaning, few persons of middle
age could truthfully say they were in sound health.'

"The fact that the last paragraph of the reinstatement ap-
plication specifically states that the answers therein are war-
ranties does not make them such. Courts should not and do not
sacrifice the substance and spirit to the letter and the form in
construing warranties and representations and in seeking to
ascertain the intention of the parties to insurance contracts.
* * *

"'Indeed, the tendency of the courts, without the aid of
legislation, has been to construe statements as to previous acci-
dents and diseases into mere assertions on the part of the appli-
cant as to what he knows of his personal knowledge, or may be
presumed in good faith to know, instead of strict warranties
regardless of personal knowledge. Wilkinson v. Insurance Co.,
30 Iowa 119. It is well settled that such warranties are to be
construed with reference to the general object of the inquiry.'
* * *

"'The contention is that he warranted himself in sound
health and that such warranty would be breached by the exist-
ence of infirmities, regardless of the knowledge or good faith of
the insured. To so hold would be to require the insured to in-
sure himself and to guarantee his own natural expectancy of
life and to forfeit his insurance after death if death came too
soon. If such a provision were enforceable regardless of good
faith of the insured, and regardless of his knowledge of hidden

infirmities, no person would know whether he was insured or not. Such question could be determined to a certainty only by an autopsy. To introduce into life insurance such an element of uncertainty would be contrary to the spirit and purpose of it and contrary therefore to public policy.' * * *

 " 'To establish such evidentiary fact of bad faith, falsehood, or deception, it is held in a multitude of cases that the proof must be "clear," "satisfactory," "convincing." ' " (Citations)

Defendant claims error in the court's failure to sustain motions for directed verdict and for judgment notwithstanding the verdict. Defendant's claims of misstatements in the application and fraud were and are urged.

We adhere to the pronouncements in the authorities just quoted and find no merit in defendant's position.

IV. Defendant requested the submission of three special interrogatories:

"1. Was the answer of Zoltan Dezsi to the question in the application, 'Have you or any dependents ever had, or been told you had, or received advice or treatment for (b) stomach trouble,' true?

"2. Was the answer of Zoltan Dezsi to the question, 'Have you or any dependents ever had, or been told you had, or received advice or treatment for any symptoms of ill health,' true?

"3. If you find that the answers of Zoltan Dezsi, as made in the application, were true, and only in that event, do you now find that the symptoms or conditions as disclosed and found at the time Dr. Aschoff treated Zoltan Dezsi in June of 1960, were symptoms and conditions from which one learned in medicine could with reasonable accuracy diagnose as evidencing an ulcer condition."

 The requested interrogatories were not submitted. There was no error.

Rule 206, Rules of Civil Procedure, provides in part as follows:

"Interrogatories. The jury in any case in which it renders a general verdict may be required by the court, and must be so required on the request of any party to the action, to find spe-

cially upon any particular questions of fact, to be stated to it in writing, which questions of fact shall be submitted to the attorneys of the adverse party before argument to the jury is commenced. The instructions shall be such as will enable the jury to answer the interrogatories and return the verdict."

This rule does not require the submission of interrogatories not germane to the issues, impossible of answer or as we said in Main v. Sheston-Luxor Cab Co., 249 Iowa 973, 976, 977, 89 N.W.2d 865, "compound or double-headed."

To the extent that the requests sought information germane to the issues the matters were covered by specific instructions limiting plaintiff's right to recover. Inquiries into what any dependent had ever been told or advised or what a doctor might have determined in 1960 were, under the evidence and circumstances in this case, too broad. They would have embroiled the jury in a pointless dispute not determinative of an ultimate issue and impossible of a categorical answer. See Main v. Sheston-Luxor Cab Co., supra; Johnson v. Mutual Life Insurance Co., 253 Iowa 1218, 1230, 115 N.W.2d 825.

Rule 206, R. C. P., requires the submission of only ultimate facts, not evidential ones, the answer to which would be decisive of the case or some claim involved therein. Plumb v. Minneapolis & St. L. Ry. Co., 249 Iowa 1187, 1196, 91 N.W.2d 380.

Where the court's instructions require the jury to determine the question contained in a special interrogatory, refusal of the request is not regarded as prejudicial error. Dohse v. Market Mens Mutual Insurance Co., 253 Iowa 1186, 1193, 115 N.W.2d 844.

V. Defendant claimed the application for insurance contained false answers. The questions in the application asked for and the answers disclosed insurance in force at the time and that insurance had not been declined, rated up or terminated. There was no error in the receipt in evidence of the policy of insurance in force on the date of the new application or the testimony as to why it was permitted to expire. Brower v. Quick, supra.

VI. Rather extensive argument of defendant-appel-

lant is devoted to claimed error of the court in not declaring a mistrial following repeated requests therefor because of publicity, disclosure and reference to the origin and status of decedent and plaintiff.

Defendant claims that the apparent motif in the trial was the "good guys" against the "bad guys"; "the innocent refugees from Russian Communism, being harmed by the 'Big Bad Insurance Company.'" The quotation is from the argument and not from the record. The argument is rather specious but not convincing.

The jury was selected and then excused until a later date. Defendant's first motion for mistrial was just prior to reconvening for trial. The motion was based on an item of courthouse news in a daily paper. The article was headed "Refugee Seeking Insurance from Husband's Death." There is no claim that the article was untrue and no showing that the information was obtained from sources other than the preliminary proceedings and files in the case.

In plaintiff's opening statement and the testimony plaintiff and decedent were identified, their origin and background mentioned and how they came to the United States revealed. Defendant argues with great vigor that this was improper and so prejudicial against defendant as to require declaration of a mistrial. We do not agree. We do agree with defendant that in all cases a fair trial is essential but we find no abuse of defendant's rights in the case at bar. In almost every jury trial there is considerable background testimony. Much of it is usually irrelevant to the main issue but we cannot hold that whenever such testimony creeps or is injected into the record there is ground for mistrial or reversible error.

This case was tried before an experienced and able trial judge and a jury of representative Linn County citizens. Defendant was represented by mature and resourceful counsel who has had years of experience and who has been signally recognized and honored by the organized bar in our state and nation. Counsel's theories and arguments did not prevail but defendant had a fair trial. Counsel fought hard but without evidence or law for support.

We have considered the whole record and numerous alleged errors even though not discussed in detail herein. To do so would unduly extend this opinion.

We find no error.

The case is—Affirmed.

All JUSTICES concur.